UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| In re: ) | Case No. 1:08-MC-9 |
| HERBERT S. MONCIER, ESQ. ) | |
| BPR No. 1910 ) | Chief Judge Curtis L. Collier |
| ) | |
| ) | |

## MEMORANDUM & ORDER

One of the lesser-known responsibilities placed upon the federal courts is the task of admitting attorneys to practice before them and, when necessary, disciplining those attorneys. Each federal court must regulate the requirements and procedures for admission; the requirements and standards for attorneys already practicing before the court; and the procedures and determinations for those attorneys who fail to adhere to the standards of that federal court. These are among the administrative or management responsibilities of the court.

The federal courts do not rely solely upon the states to determine the fitness of an attorney for admission to practice law in federal courts. The federal courts do require an attorney who desires admission into a federal bar to be admitted first to a state bar. However, such an attorney must still apply separately to practice law in a federal court, because the federal courts have their own distinct requirements and standards for attorneys practicing before them. The federal courts also have their own requirements and standards which must be maintained for members to continue to practice in federal court. Thus, the requirements for admission and continued practice in federal and states courts are distinct. Indeed, many lawyers enjoy a long and successful career practicing in state court without ever setting foot in federal court; admission to a federal bar is not a necessity to practice

law.

The federal requirements and standards are not necessarily higher or lower than those of a state bar, but rather reflect the different nature and circumstances of the federal and state courts. As one example, practice in federal courts is generally more specialized and more formal than practice in state courts, often due to the nature of the legal issues which are addressed in federal courts. Additionally, a federal bar is made up of attorneys from all over the United States and its territories. This is certainly true in the Eastern District of Tennessee, where a large number of the attorneys that are members of the bar of this court are from not just Tennessee, but all across the country. Federal courts must establish their own standards of practice to create an effective, functional judicial system which involves attorneys practicing throughout the United States and its territories.

The existence and importance of varying standards and expectations in the federal courts is evident in the oath attorneys must pledge to become members of that federal bar. Attorneys admitted to federal court must take the following oath:

> I do solemnly swear, that to the best of my knowledge and ability, I will support and defend the Constitution of the United States against all enemies, foreign and domestic .... And, that I will demean myself as an attorney, proctor and solicitor of this Court, uprightly and according to law; so help me God.

Upon taking this oath and being approved for admission, attorneys become officers of the court.[1] At a minimum, this oath obligates attorneys admitted to the bar of a federal district court to demean themselves as an attorney uprightly and according to law. Judges of the Eastern District of

---

[1] The United States Supreme Court discussed the concept of "officer of the court" and the obligations that come with that designation in *In re Snyder*, 472 U.S. 634, 644-45 (1985). An attorney has a dual obligation to his or her clients and the system of justice. "The license [to practice law] granted by the court requires members of the bar to conduct themselves in a manner compatible with the role of courts in the administration of justice." *Id.*

2

Tennessee are very proud that the great majority of attorneys admitted to practice law in this district do so in a highly professional and civil manner, demonstrating respect for the court, opposing counsel, the judicial system, and the parties involved in the judicial action. The judges of this district likewise treat the attorneys before them with dignity, respect, civility, and as professionals.

Unfortunately, the Court is now confronted with one of those rare instances where an attorney admitted to the bar of the Eastern District of Tennessee has failed to "demean [himself] as an attorney, proctor and solicitor of this Court, uprightly and according to law," as required by his oath; has engaged in unethical conduct tending to bring the court and the bar of the Eastern District of Tennessee into disrepute; and has engaged in professional misconduct of a nature that violated the Tennessee Rules of Professional Conduct as interpreted and applied by this Court.[2] *See Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 525 F. Supp. 2d 448, 449-50 (S.D.N.Y. 2007) ("From time to time, a lawyer's misconduct is so grave and so blatant as to demand more. When such lapses occur in the federal courts, it is not only our prerogative but our responsibility to address them and, where appropriate, impose sanctions. Indeed, as Canon 3B(3) of the Code of Conduct for U.S. Judges makes clear: 'A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a . . . lawyer.'") (footnotes omitted).

This case involves an attorney who refused to obey a court order, threatened to abandon a client during a court proceeding, and displayed disrespectful and contemptuous behavior towards

---

[2]The Court gives considerable weight to the opinions of the Tennessee state courts in regards to the interpretation of the Tennessee Rules of Professional Conduct, but it is ultimately the responsibility of this Court and this Court alone to determine whether the Tennessee Rules of Professional Conduct were violated by Respondent such that he is subject to disciplinary action in this Court.

3

the institutional role of the judge. The gravity of this attorney's misconduct is exacerbated by his inability to recognize and apologize for his wrongdoings, his frivolous filings with this Court, and other aggravating factors. Accordingly, for the following reasons, the Court **SUSPENDS** Respondent, Herbert S. Moncier, from the bar of the Eastern District of Tennessee.

## I.    PROCEDURAL HISTORY AND BACKGROUND

### A.    The Show Cause Order

On January 17, 2008, the Court ordered Respondent Herbert S. Moncier ("Respondent") to show cause why disciplinary action should not be taken against him for unethical and unprofessional conduct. The Show Cause Order made certain factual allegations regarding Respondent's conduct as counsel in a court proceeding before United States District Judge J. Ronnie Greer on November 17, 2006 (Court File No. 1). Specifically, the Show Cause Order alleged Respondent "repeatedly interrupted or spoke over the presiding judge," "accused the prosecution of engaging in a conspiracy to prevent him from trying cases due to his success in past trials," "threatened to 'sit there and remain moot,'[3] i.e, not provide a defense for his client, due to a potential conflict Respondent perceived," "contradict[ed] the court's admonishment," and disobeyed a direct order from the court that he stop interrupting and not say another word (*id.*, pp. 1-3).

The Show Cause Order informed Respondent that based upon those factual allegations, it appeared "Respondent's actions constitute a violation of an order of the court, abuse of the court, disrespect for the court, contemptuous behavior directed at the court, interference and needless

---

[3]The transcript uses the word "moot," but the context clearly shows the word used or intended was "mute." *See United States v. Vassar*, No. 2:05-CR-75-3 (E.D. Tenn. filed Sept. 13, 2005), Court File No. 683, pp. 41-42.

4

prolongation of the proceeding before the court, and obstructive behavior" (*id.*, p. 1). The Show Cause Order quoted from Eastern District of Tennessee Local Rule 83.7 ("E.D.TN. LR" or "Local Rule"), which provides: "The court may impose discipline [for a violation] of the Rules of Professional Conduct [or for] unethical conduct tending to bring the court or the bar into disrepute." (*Id.*, p. 4).

The Show Cause Order gave Respondent twenty days to show cause why disciplinary action should not be taken against him (*id.*, p. 4). The Show Cause Order, citing E.D.TN. LR 83.7(d), specified what was required in Respondent's response (*id.*, pp. 4-5). The Show Cause Order directed Respondent to include in his response a specific request for a hearing or a statement specifically declining a hearing (*id.*, p. 5). Last, the Show Cause Order required Respondent to inform other judicial officers in this district before whom he had cases of the initiation of this action (*id.*).

The Show Cause Order, and indeed the local rules which it cited, made it clear what specific information was required in a response - namely whether the factual allegations in the Show Cause Order were accurate and, if those factual allegations were accurate, why disciplinary action would not be warranted.[4]

## B.     The Underlying Conduct

The Show Cause Order relates to conduct of Respondent in a court proceeding before United States District Judge J. Ronnie Greer on November 17, 2006 (*see Vassar*, No. 2:05-CR-75-3, Court

---

[4]It became apparent to the Court after Respondent filed several non-responsive motions that Respondent was introducing extraneous and irrelevant matters into these proceedings. In an effort to clarify any misunderstanding Respondent may have had, the Court made clear to Respondent that he should focus on demonstrating the factual allegations were inaccurate, or that if accurate, disciplinary action was not warranted (Court File No. 6, p. 5)

File No. 683). Because of Respondent's conduct during the course of the proceeding, Judge Greer had Respondent taken into custody. Subsequently, Judge Greer filed a Show Cause Order alleging Respondent had committed a criminal offense, i.e. contempt of court (*id.*, Court File No. 677). This charge was referred to the United States Attorney for this district who reviewed the charge and decided to prosecute Respondent. Thereafter, Respondent was tried and found guilty of criminal contempt of court. Judge Greer issued a written opinion explaining his findings and conclusions.[5] *United States v. Moncier*, 2007 WL 1577718 (E.D. Tenn. May 30, 2007) ("*Moncier II*"). In his opinion, Judge Greer noted Respondent had exhibited disrespect and contempt for the institutional role of the judge. *Id.* at *3-4. The Court will return to this later.

Prior to the contempt of court trial, Respondent filed a motion seeking to disqualify Judge Greer from presiding over the trial. Judge Greer denied this motion in a written opinion. *United States v. Moncier*, 2007 WL 1206731 (E.D. Tenn. Apr. 23, 2007) ("*Moncier I*"). This opinion also contains relevant factual background in this matter.

## II.     EASTERN DISTRICT OF TENNESSEE LOCAL RULE DEALING WITH DISCIPLINARY ACTION AGAINST MEMBERS OF ITS BAR

---

[5]Specifically, Judge Greer found Respondent guilty of criminal contempt in violation of 18 U.S.C. §§ 401(1) and 401(3). The allegations in the Show Cause Order are independent of Respondent's conviction. While a conviction in and of itself is grounds for disciplinary action, the Court is not relying upon Respondent's conviction; rather, the Court is relying upon Respondent's unethical and unprofessional conduct at the November 2006 hearing. In other words, even if Respondent had not been convicted of criminal contempt, the Court would still have initiated disciplinary action based solely upon Respondent's misconduct.

This does not mean, however, that the Court will not consider the relevant factual findings Judge Greer has made as a party directly privy to Respondent's conduct. Judge Greer's observations and insights as to the content and nature of Respondent's conduct and utterances are, quite obviously, relevant here.

6

### A. Federal Court Authority to Admit and Discipline

The very concept of a court carries with it certain authority necessary for it to function. "It has long been recognized that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 7 Cranch 32, 34 (1812)). Among these necessary powers is the power to demand submission to the authority and rules of the court. "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Id.* (quoting *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821)). The necessary powers also include the powers to admit members to its bar and to regulate and discipline attorneys. "[T]he Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it." *Id.*; *see also, Ex Parte Burr*, 9 Wheat. 529, 531 (1824); *In the Matter of Searer*, 950 F. Supp. 811, 813 (W.D. Mich. 1996). Disciplining an attorney includes the authority to suspend and disbar that attorney.

> "Courts have long recognized their authority to suspend or disbar attorneys, an inherent power derived from the attorney's role as an officer of the court that granted admission." *In Re Hoare*, 155 F.3d. 937, 940 (8th Cir. 1998). As such, a court's power to discipline members of its bar is "autonomous." *In re Attorney Discipline Matter*, 98 F.3d 1082, 1087 (8th Cir. 1996) (citing *Theard v. United States,* 354 U.S. 278, 281 (1957)).

*In re Fletcher*, 424 F.3d 783, 792 (8th Cir. 2005).

The power of a court to admit members to its bar carries with it the power to disbar a member. "This power of removal from the bar is possessed by all courts which have authority to admit attorneys to practice." *Bradley v. Fisher*, 80 U.S. 335, 354 (1871).

7

Attorney disciplinary proceedings are not civil actions and not criminal prosecutions. *Cunningham v. Ayers*, 921 F.2d 585, 586 (5th Cir. 1991) ("Disbarment proceedings are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.") (citations omitted); *Searer*, 950 F. Supp. at 813. These proceedings are investigations into the fitness and conduct of attorneys admitted to the court's bar. *In re Lehtinen*, 332 B.R. 404, 412 (B.A.P. 9th Cir. 2005). However, attorney disciplinary proceedings are "adversarial and quasi-criminal in nature," and "an attorney is entitled to procedural due process which includes notice and an opportunity to be heard in disbarment or suspension proceedings." *Dailey v. Vought Aircraft Co.*, 141 F.3d 224, 229 (5th Cir. 1998).

### B.  Local Rule 83.7

By local rules, the court of the Eastern District of Tennessee has adopted procedures for disciplining members of its bar who violate its standards. E.D.TN. LR 83.6 and 83.7. In part, Local Rule 83.7(a) reads:

> Conduct Subject to Discipline. The court may impose discipline on any member of its bar who has violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee, or has engaged in unethical conduct tending to bring the court or the bar into disrepute. The court may also discipline any member who has been suspended or disbarred from the practice of law by the state in which he or she is a member, or by any court of record. Discipline which may be imposed includes disbarment, suspension, reprimand, or such other further disciplinary action as the court may deem appropriate and just.

By its text, the rule authorizes disciplinary actions against a member of the Eastern District of Tennessee bar who has (1) violated the Rules of Professional Conduct,[6] or (2) engaged in

---

[6]It is important to keep in mind the Tennessee Rules of Professional Conduct expressly do not "exhaust the moral and ethical considerations that should inform a lawyer," they "simply provide

unethical conduct tending to bring the court or the bar into disrepute.[7]  The rule reads in the disjunctive so that a violation of either prong of the rule is sufficient to warrant the imposition of discipline.

The rule assigns to the Chief Judge of the Eastern District of Tennessee on behalf of the entire court the responsibility of initiating disciplinary action.  In pertinent part it reads:

> Initiation of Disciplinary Proceedings. Formal disciplinary proceedings shall be initiated by the issuance of an order to show cause signed by the Chief Judge. An order to show cause may be issued by the Chief Judge on his or her own initiative or upon a complaint filed by any counsel of record or party to an action in this court. When such order is issued on the court's initiative, no separate complaint need be filed.

E.D.TN. LR 83.7(b).

The rule envisions a disciplinary action being initiated in either of two ways.  First, an action can be initiated upon the receipt of a complaint filed by counsel of record in a lawsuit, or by a party to a lawsuit.  If the action is based upon a complaint filed by counsel of record or a party, then the rule contains a list of items that must be included in the complaint.  E.D.TN. LR 83.7(b)(1).  In such an action, the counsel of record or the party is the complainant.

Second, an action can be initiated by the Chief Judge upon his own initiative. In such a case, no separate complaint is required.  The Chief Judge may initiate action based upon facts personally observed or known by the Chief Judge, or which come to his knowledge through information

---

a framework for the ethical practice of law."  Tenn. Sup. R. 8, Scope (2).

[7]This prong of the rule does not give the court unfettered discretion.  Unethical conduct must be defined by case law; widely accepted standards of the profession such as standards adopted by the American Bar Association, the American College of Trial Lawyers, and other such organizations; or the generally recognized standards of ethical and professional behavior in this district.

9

provided to the Chief Judge by others. By either method, the initiation of the action begins an inquiry into the alleged conduction, as explained below; it is not in any way a determination of the truth of any matter.

In this case, no counsel of record or party filed a complaint with the Court. The Court authorized action on the Chief Judge's own initiative.

Regardless of how the action was initiated, if the action proceeds to the disciplinary stage, the Chief Judge must issue a show cause order. E.D.TN. LR 83.7(c)(2). The rule also contains specific requirements that must be contained in any response to the show cause order. E.D.TN. LR 83.7(d). Again, the show cause order is an initial stage in the process, which sets out the alleged conduct so as to afford the attorney in question a full and fair opportunity to deny, correct, or explain that account of the behavior; it is not a determination of the truth of any matter.

The rule requires a response from the attorney within twenty days of the entry of the show cause order. E.D.TN. LR 83.7(c)(2). The response is required to contain the following:

(1) The name, address and telephone number of the respondent.

(2) A specific admission or denial of each of the factual allegations contained in the complaint and order to show cause and, in addition, a specific statement of any facts on which respondent relies, including all other material dates, places, persons and conduct relevant to the allegations of the order.

(3) All documents or other supporting evidence not previously filed with the complaint or order that are relevant to the charges of alleged misconduct.

(4) A specific request for a hearing or a statement specifically declining a hearing.

(5) A statement signed by the respondent under the penalty of perjury indicating that the respondent has read the response and that, to the best of respondent's knowledge, the facts alleged therein are correct.

E.D.TN. LR 83.7(d).

The rule provides that Respondent has the right to representation by counsel and also the right to call witnesses at any hearing. E.D.TN. LR 83.7(h)(3). All filings under the rule are under seal to protect the reputation of the attorney. *See* E.D.TN. LR 83.7(b), (d), (h)(2). The reputation of an attorney is one of his or her most valued possessions. *In re Williams*, 156 F.3d 86, 90 (1st Cir. 1998) ("It is trite, but true, that a lawyer's professional reputation is his stock in trade, and blemishes may prove harmful in a myriad of ways."). Most attorneys consider their reputation a badge of honor. Any complaint lodged against an attorney whether founded or unfounded is a stain on that badge. To quote from a very familiar formulation of the importance of an attorney's reputation:

> The reputation you develop for intellectual and ethical integrity will be your greatest asset or your worst enemy. You will be judged by your judgement. Treat every pleading, every brief, every contract, every letter, every daily task as if your career will be judged on it.
>
> There is no victory, no advantage, no fee, no favor, which is worth even a blemish on your reputation for intellect and integrity ... Dents to [your] reputation are irreparable.[8]

The confidentiality rule serves to protect attorneys who may be charged with professional misconduct but have those charges later proven unfounded. However, it is important to note that the obligation of confidentiality is one-sided. The court and its staff are prohibited from disclosing the disciplinary action unless authorized by the Chief Judge. The accused attorney has First Amendment rights that are not diminished in the slightest by the court's local rule. The Local Rule does not contain a single word which imposes any secrecy or confidentiality obligation on the accused attorney, nor did any of the Court's orders in this case. Nothing forbids the accused attorney from shouting to the world from the heights of Mount LeConte or Lookout Mountain that

---

[8]Excerpts from commencement speech by Vincent Foster given in May 1993 at the University of Arkansas School of Law.

disciplinary action has been initiated against him or her.[9]

Respondent, and any other accused attorney, would be free to disclose the initiation of the disciplinary process to anyone without any permission or authorization from the court. The court and its staff, however, would not be free to disclose the action, even to correct inaccurate information publically disclosed by the attorney, unless authorized by the Chief Judge. If an accused attorney desires the entire action open to the public, the attorney can waive the confidentiality protection afforded by the local rule and request the Court open the entire proceedings, as Respondent did in this case some weeks after the action was initiated.

Respondent's claim that the Chief Judge has unfettered discretion to authorize the public disclosure of the disciplinary proceeding is false (Court File No. 68, pp. 4-5). The relevant Local Rule states:

> All complaints relating to disciplinary matters under this rule shall be filed under seal with the clerk. All records pertaining to attorney disciplinary proceedings, except with respect to reinstatement proceedings, shall be confidential and kept under seal in the Clerk's Office unless otherwise ordered by the court.

E.D.TN. LR 83.7(b).

Confidentiality is the presumptive norm throughout proceedings of this nature, for the

---

[9]This freedom of the respondent-attorney to speak is the norm in disciplinary procedures of state bars. *E.g.*, Tenn. Sup. R. 9, § 25.5 (". . .nothing in this Section or these Rules shall prohibit the complainant, respondent-attorney, or any witness from disclosing the existence or substance of a complaint, matter, investigation, or proceeding under these Rules or from disclosing any documents or correspondence filed by, served on, or provided to that person."); Georgia State Bar Rules and Regulations, Rule 4-221(d)(3) ("Nothing in these rules shall prohibit the complainant, respondent or third party from disclosing information regarding a disciplinary proceeding, unless otherwise ordered by the Supreme Court or a Special Master in proceedings under these rules.").

reasons explained above.[10]  Confidentiality exists at two separate periods during the proceedings.

First, at the initial phase when a show cause order is issued, Local Rule 83.7(b) provides, "All records pertaining to attorney disciplinary proceedings, except with respect to reinstatement proceedings, shall be confidential and kept under seal in the Clerk's Office unless otherwise ordered by the court."  Here, this Court informed Respondent of the confidential nature of the proceedings in its Show Cause Order on January 17, 2008 (Court File No. 1, p. 5).  The presumption of confidentiality is very strong at this phase, because a show cause order is issued prior to an attorney having any opportunity to address the allegations involved.  The court can override this presumption, and open the record to the public, only upon compelling grounds, i.e. where failing to override the presumption of confidentiality would threaten immediate harm to the attorney's current and prospective clients, the legal system, and the general public.

Second, if a disciplinary hearing has been requested and is determined to be necessary, Local Rule 83.7(h)(2) provides, "Such hearings, at the discretion of the judicial officer, shall be confidential and shall be recorded."  At this phase, the judicial officer presiding over the hearing has discretion to override the presumption of confidentiality and open the hearing to the public when there is a compelling reason to do so.  This notion of "discretion" to override the confidentiality entails the legal definition of "discretion," which requires any decision based on the exercise of that discretion to be supported by facts, law, and reason.  *See, e.g.*, *Romstadt v. Allstate Ins. Co.*, 59 F.3d

---

[10]Confidentiality is also common during some phases of state disciplinary proceedings. *E.g.*, Tenn. Sup. R. 9, § 25.1 ("All matters, investigations, or proceedings involving allegations of misconduct by or the disability of an attorney, including all hearings and all information, records, minutes, files or other documents of the Board, district committee members and Disciplinary Counsel shall be confidential and privileged, and shall not be public records . . ."); Georgia State Bar Rules and Regulations, Rule 4-221(d)(1) (keeping all disciplinary investigations and proceedings during the investigative stage confidential).

13

608, 615 (6th Cir. 1995) (where the Court of Appeals for the Sixth Circuit reviews a district court's exercise of "discretion" to assure it does not rely on clearly erroneous findings of fact, improper application of the law, or an erroneous legal standard.)

As previously stated, under the local rules, the judicial officer must have a compelling reason to override the confidentiality protections, which are afforded to an attorney during the disciplinary proceedings. One obvious reason to override that protection is when the attorney in question waives the confidentiality afforded to him or her, and formally requests that the hearing be open to the public - as occurred here. Upon receipt of Respondent's signed waiver of confidentiality, Magistrate Judge Lee overrode the confidentiality provided in the local rules and the hearing was open to the public.

## III.    RESPONDENT'S LATE FILED RESPONSE

By the Court's Show Cause Order and the court's local rule, Respondent was required to file his response by February 6, 2008, addressing the accuracy of the factual assertions in the order and providing the other information required by E.D.TN. LR 83.7(d) (Court File No. 1, p. 4). Respondent did not file a response with any of this information by that time, disobeying the Court's Show Cause Order and the local rule.[11] He also did not request or decline a hearing as required. *See* E.D.TN. LR 83.7(d)(4). Instead, Respondent filed four non-responsive motions on February 4, 2008. The four motions were: (1) Motion for Extension (Court File No. 2); (2) Motion for Relief

---

[11]Tenn. Sup. R. 8, Tennessee Rules of Professional Conduct 8.4(g) provides: "It is professional misconduct for a lawyer to . . . [k]nowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party, unless the lawyer is unable to comply with the order or is seeking in good faith to determine the validity, scope, meaning, or application of the law upon which the order is based."

14

from Notification (Court File No. 3); (3) Motion for Disclosures (Court File No. 4); and (4) Motion to Dismiss Without Prejudice (Court File No. 5). Finding that none of these motions was meritorious,[12] the Court denied them on February 11, 2008 (Court File No. 6).

By the terms of the Court's Show Cause Order, Respondent was also ordered to notify all judicial officers in the district before whom he had pending cases of the initiation of the disciplinary action (Court File No. 1, p. 5). The Court assumed Respondent would make these notifications immediately upon receipt of the Show Cause Order. Respondent disobeyed this order and did not notify the other judicial officers immediately or even within the time frame for when a response was due.

Under the Local Rules, Respondent's failure to address the substance of the Show Cause Order and failure to request a hearing would have permitted the Court to proceed without a response or hearing from Respondent. However, this Court was reluctant to proceed in such a serious matter without providing Respondent, perhaps to excess, every opportunity to address the issues before the Court. The Court viewed his non-responsive motions as a general denial of the facts contained in the Show Cause Order and as a request for a hearing, so as to be able to continue with the procedural and substantive protections afforded to Respondent by the Local Rules (Court File No. 7).[13] Despite Respondent not timely requesting a hearing, the Court ordered a hearing to address the substance of the Show Cause Order. Put simply, the Court went out of its way to accommodate Respondent,

---

[12]The Court will discuss these motions in more detail below.

[13]Based upon the failure of Respondent to file a response, pursuant to Local Rule 83.7(h), it was within the power of the Court to dispense with a hearing and proceed to take final action on the Show Cause Order. "A disciplinary hearing shall be held only when the member under investigation has requested such a hearing in a timely response and the judge or the judicial officer has determined that such a hearing is necessary for the proper disposition of the charges."

15

despite Respondent's disregard for the local rules and order of the Court.

In relation to the irrelevant and non-meritorious filings the Respondent did make, the Court was disturbed by the unprofessional nature, tone, and content of Respondent's four motions, and "strongly urge[d] Respondent to obtain counsel to represent him in the hearing" (Court File No. 6, p. 5). The local rule was clear that Respondent had the right to legal representation, E.D.TN. LR 83.7(h)(3), and the Court's encouragement for Respondent to exercise that right was based on the assumption that Respondent's legal counsel would be better able to be objective and perform in a more professional manner.

The Court appointed Magistrate Judge Susan K. Lee of this district[14] as the judicial officer to investigate and conduct any hearing in this matter pursuant to Local Rule 83.7(g). In Magistrate Judge Lee's first order to Respondent, she also signaled to Respondent the benefit of counsel (Court File No. 8, p. 2). This advice was not accepted by Respondent, who on February 24, 2008, filed a statement saying he intended to represent himself (Court File No. 14). Magistrate Judge Lee issued an order on February 13, 2008, setting a hearing date and, because she was unable to conduct the hearing without Respondent's admissions or denials, required Respondent to file the response he had been ordered to file in the Show Cause Order but had failed to do (Court File No. 8).

Finally, on February 25, 2008, Respondent filed his response to the Show Cause Order, which had been due no later than February 6, 2008 (Court File No. 13).

## IV.    THE    HEARING    BEFORE    MAGISTRATE    JUDGE    LEE,    HER

---

[14]Magistrate Judge Lee and the undersigned are resident in the Chattanooga Division of the District. Respondent has his office in Knoxville which is in the Knoxville Division of the District. Judge Greer is resident in the Greeneville Division of the District.

**RECOMMENDATION, AND RESPONDENT'S EXCEPTIONS**

**A.      The Hearing and Magistrate Judge Lee's Recommendation**

Pursuant to the Court's appointment, Magistrate Judge Lee scheduled a hearing on the allegations in the Show Cause Order.  On March 5, 2008 and March 6, 2008, Magistrate Judge Lee conducted the hearing (Court File Nos. 32, 33).[15]  Respondent was represented at the hearing by attorney Ralph E. Harwell, who entered his appearance on the morning of the first day of the hearing.

At the hearing, Magistrate Judge Lee provided Respondent an opportunity to present any evidence or other information he wished.  Respondent presented exhibits.  The only witness presented was Respondent.  Respondent testified over two days.  His testimony was rambling, convoluted, often disconnected, and rarely addressed his conduct at issue.  With respect to the factual allegations in the Show Cause Order, Respondent attempted to explain them away; when pressed by Magistrate Judge Lee, Respondent largely admitted the accuracy of the allegations, but not without evasions, equivocations, dissemblances, and justifications.  Magistrate Judge Lee also listened to arguments of Respondent's counsel.[16]  Furthermore, Respondent requested and was granted permission to submit additional evidence after the hearing.  Respondent supplemented his

---

[15]The Transcript of this hearing will be referred to in this opinion as "Tr. ___."

[16]At the hearing before Magistrate Judge Lee, "Respondent claimed the original confidential nature of the disciplinary proceedings prevented him from communicating with potential witnesses." (Court File No. 65, p. 36).  This is blatantly untrue.  The Local Rule clearly states an accused member of the bar has the right to representation by counsel, to present witnesses and other evidence, and to confront and cross-examine adverse witnesses. E.D.TN. LR 83.7(h)(1). Magistrate Judge Lee, in repeating the language of the rule, also informed Respondent he was permitted to present witnesses (Court File No. 8, p. 2).  As discussed above, nothing in the Local Rule or Court orders prohibited Respondent from communicating the initiation of the disciplinary action to anyone he chose, including witnesses or other attorneys that might have provided him assistance.

own testimony and provided numerous statements from other witnesses, predominantly other attorneys who were not present at the hearing (*see* Court File Nos. 35-64).

Following the hearing, on April 7, 2008, Magistrate Judge Lee filed a very thorough, well-written and carefully reasoned Recommendation (Court File No. 65; *In re Moncier*, 2008 WL 1808547 (E.D.Tenn. Apr. 7, 2008)).[17] In the Recommendation, Magistrate Judge Lee carefully recounted what had transpired in the case up to the date of the hearing; what the transcript[18] of the hearing before Judge Greer, which contained Respondent's conduct leading to the Show Cause Order, showed; what transpired in the hearing before Magistrate Judge Lee; Respondent's evidentiary submissions made during and after the hearing; Respondent's testimony and responses to the Show Cause Order; and Respondent's objections. She did so in a comprehensive manner. After considering Respondent's evidence and arguments, Magistrate Judge Lee thoughtfully analyzed the factual allegations in the Show Cause Order, Local Rule 83.7, and other applicable authority, and concluded the factual allegations were accurate. In fact, she found that Respondent did not seriously dispute the factual allegations (Court File No. 65, p. 44). She also found by clear and convincing evidence Respondent had "engaged in: (a) disruptive behavior during the November 2006 hearing; (b) disobedience of a direct order of the court during the hearing; and (c) unprofessional and unethical behavior that violates the Rules of Professional Conduct or brings the court or bar into disrepute during the hearing" (*id.* at 56). After noting Respondent had not apologized for his unethical and unprofessional conduct, but only for the results of his misbehavior

---

[17]Citations to Magistrate Judge Lee's Recommendation will be made to the Recommendation as it appears in the record of this case.

[18]This transcript, *United States v. Vassar*, No. 2:05-CR-75-3 (E.D. Tenn. filed Sept. 13, 2005), Court File No. 683, will be referred to in this opinion as "Vassar Tr. __."

(*id.* at 57), and that it is questionable "whether Respondent is likely to correct his unethical and unprofessional conduct without some form of meaningful discipline under Rule 83.7," Magistrate Judge Lee recommended that this Court "impose appropriate discipline for Respondent's conduct during the November 2006 hearing" (*id.* at 61).

Pursuant to Local Rule 83.7(i)(2), Magistrate Judge Lee provided notice to Respondent that any exceptions or objections to her report were to be submitted within ten days of her Recommendation (*id.*).

## B. Respondent's Objections to Magistrate Judge Lee's Recommendation

On April 18, 2008, Respondent filed his Exceptions to Magistrate Judge Lee's Recommendation (Court File No. 68). His twenty-five page Exceptions contain twenty individual exceptions or objections, and 123 individual paragraphs.

As an initial observation, the Court recognized a noticeable improvement in the tone and quality of the Exceptions when compared to Respondent's previous filings. Much of the shoddiness, sloppiness, misspellings, and unprofessional tone the Court observed in Respondent's earlier submissions was absent in Respondent's Exceptions, although unfortunately the Exceptions still contain many of the same frivolous arguments, unsupported and underdeveloped contentions, and unfounded accusations of Respondent's previous filings. Nevertheless, the quality improved - an indication the Court was correct when it strongly urged Respondent to obtain counsel to represent him in these proceedings. It is unfortunate he did not accept the Court's suggestion initially, before Respondent's earlier, wholly unprofessional filings became a part of the record. No one, not the Court, the public, the profession, or Respondent, benefitted from Respondent's earlier shoddy and unprofessional filings.

The most telling aspect of Respondent's Exceptions is the complete omission of even a single challenge to any of the substantive findings or recommendations in Magistrate Judge Lee's Recommendation. Respondent does not offer an objection to any of Magistrate Judge Lee's findings or recommendations on the merits of this matter. The Court takes as a testament to the fine work performed by Magistrate Judge Lee that Respondent cannot lodge even a single objection of substance on the merits to her findings and recommendations.

Unfortunately, what is also glaringly absent from Respondent's Exceptions is any appreciation on Respondent's part that his behavior before Judge Greer in the November hearing was improper. Respondent's Exceptions are entirely focused on avoiding blame or discipline for his unprofessional behavior, using shallow arguments based upon his misunderstanding and mischaracterization of the local rules, the disciplinary proceedings, and the law.

## V. DISCUSSION

The Court will now consider Respondent's Exceptions to Magistrate Judge Lee's Recommendation. In doing so, the Court also will discuss the Recommendation, Respondent's testimony at the hearing, his response to the Show Cause Order, and other motions and filings Respondent submitted in this proceeding.

Some of these matters are not among the factual allegations in the Show Cause Order and will not inform this Court's decision on whether Respondent engaged in unethical and unprofessional conduct in the November 2006 hearing before Judge Greer. However, the Court also is charged with determining the appropriate disciplinary action to promote and maintain the standards of professional and ethical behavior required of Respondent and all attorneys before the

federal courts of the Eastern District of Tennessee. As such, all of the matters considered here are highly pertinent to this second determination, because they demonstrate whether Respondent now accepts the professional and ethical obligations required of members of the bar of this court; whether his unethical and unprofessional behavior alleged in the Show Cause Order is likely to be repeated in the future; and what disciplinary measures are required to assure Respondent's future compliance with the professional and ethical standards of this bar.

### A. Respondent's Exceptions to Magistrate Judge Lee's Recommendation

Although his Exceptions are numerous, they do not require extensive discussion. The Exceptions do not challenge any of the findings or recommendations Magistrate Judge Lee made regarding the merits of the proceedings. Respondent does not object to Magistrate Judge Lee's findings that: (1) he interrupted Judge Greer during the November 2006 hearing; (2) he accused his opposing counsel of involvement in a conspiracy against him; (3) he threatened to abandon his client; (4) he willfully and intentionally disobeyed a direct order from Judge Greer; (5) he engaged in professional misconduct that violates the Tennessee Rules of Professional Conduct and constitutes unethical conduct that tends to bring the court and bar into disrepute; (6) he is not apologetic for his misconduct; (7) he is likely to repeat the misconduct because he fails to acknowledge his actions constitute unprofessional misconduct; and (8) discipline is necessary.

All of Respondent's exceptions are procedural in nature and many merely regurgitate earlier arguments. They can be broken down into just a few categories, as follows:

### 1. Magistrate Judge Lee and the undersigned must be disqualified because they are embroiled in a public controversy with Respondent (Exceptions I and II)

Respondent alleges that Magistrate Judge Lee and the undersigned are involved in a public

controversy with him arising out of some unidentified newspaper articles in an unidentified newspaper (Court File No. 68, pp. 1-5). Respondent has not placed these in the record. Nothing in the record of these proceedings suggests any controversy involving members of this court. Federal judges are sometimes the subject of criticism or unflattering portrayals in the media based upon their decisions. This Court is no exception. However, media coverage or criticism, in and of itself, does not constitute "public controversy." If it did, every judge that made an unpopular ruling that drew media coverage would be disqualified from further involvement with that particular case. The Court is not aware of any "public controversy" in which it or the Magistrate Judge is involved, or any which has "embroiled" the court (*id.*).

### 2. Discipline is barred as double jeopardy because Judge Greer has already punished him (Exception III)

The Court finds no merit in Respondent's double jeopardy argument. Double jeopardy prevents a person from being punished *criminally* for the same offense. *Herbert v. Billy*, 160 F.3d 1131, 1136 (6th Cir. 1998) (citing *Witte v. United States*, 515 U.S. 389, 396 (1995)). A disciplinary proceeding is not a criminal proceeding, nor is attorney discipline equivalent to criminal punishment. *See Searer*, 950 F. Supp. at 813.[19]

---

[19]Respondent does not acknowledge or address these or any similar cases, which are directly on point, in his Exceptions. Instead, Respondent cites two United States Supreme Court cases which provide him no apparent legal support. In *United States v. Ursery*, 518 U.S. 267, 270 (1996), the Supreme Court held proceedings for criminal drug offenses and civil forfeiture of the drugs and money involved did not invoke double jeopardy. In *United States v. Bajakajian*, 524 U.S. 321, 324, 328, 334-35 (1999), the Supreme Court determined that the civil forfeiture of currency involved in a criminal offense for failing to report exported currency was punishment, and violated the Eighth Amendment prohibition against excessive fines, because the amount of the civil forfeiture was grossly disproportionate to the gravity of the offense. Respondent makes no meaningful effort to relate the facts or underlying law of these cases to the facts before this Court. The Court can only conclude this is yet another successful attempt by Respondent to waste the Court's time and resources, and shows a complete lack of respect for the Court, the profession, and the public - whose

22

Disciplinary and criminal proceedings are of fundamentally different natures. Respondent's conviction for criminal contempt and the proceedings here have two distinct purposes, operating in two distinct spheres. Judge Greer could not have disbarred Respondent from the federal bar for the Eastern District of Tennessee as a result of his criminal contempt conviction any more than this Court could convict Respondent of a crime for violating the ethical and professional standards of the Eastern District of Tennessee.

Respondent's argument is ultimately most exasperating because, in addition to lacking any legal support, it defies logic. According to Respondent, double jeopardy prevents an attorney from being both convicted of a criminal offense and disciplined by a federal court in its maintenance of the ethical and professional standards of the members of its bar. If that were true, an attorney convicted of fraud, murder, treason, or any other criminal offense would be protected by double jeopardy from being disbarred for that underlying conduct. The federal court, in turn, might shield such an attorney from being criminally convicted if it disbarred the attorney based upon the same conduct which would support a criminal conviction.

### 3. Preclusive effect and consideration of Judge Greer's factual findings (Exceptions IV, V, VI, IX, X)

Respondent makes numerous arguments disputing this Court's ability to consider the factual findings made by Judge Greer in Respondent's criminal contempt conviction (Court File No. 68, pp. 7-11, 14-17). Respondent argues the Court is precluded from doing so based on the Show Cause Order (*id.*, p. 7); he was denied due process as a result (*id.*, p. 9); he was "blindsided" by the use of

---

taxes fund the Court and who relies upon the Court to administer the law in all the civil and criminal matters currently pending before it, while the Court instead must address Respondent's spurious Exception.

those findings (*id.*, p. 10); and use of Judge Greer's factual findings constitutes issue preclusion, which Respondent then argues is impermissible (*id.*, pp. 15-17).

Respondent does not factually or legally develop most of these arguments so as to provide this Court with a solid basis to analyze his exceptions. Instead, Respondent states vague conclusions and provides very little else with which this Court might decipher the nature, purpose, and relevancy of his arguments. Put simply, this Court cannot consider and respond to what is not provided. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

However, the Court endeavors here to respond as best as it is able in light of the predominantly inadequately-explained, legally-unsupported, and factually-barren arguments presented. In relation to Exception IV, despite Respondent's continued assertion these proceedings rely upon his criminal contempt conviction (Court File No. 68, pp. 7-9), the Show Cause Order clearly states the Court is reviewing the conduct at the November 2006 hearing, not the conviction that resulted from it (Court File No. 1, p. 3 n.1). The Court's determination here, and Magistrate Judge Lee's Recommendation, is based upon the conduct at the November 2006 hearing; the Court is not concerned here with whether that conduct fulfills the legal requirements for a criminal contempt conviction.

Addressing Exceptions V, VI, and IX, Respondent's claim that he was somehow "blindsided" by the consideration of Judge Greer's factual account of his conduct, provided in his written opinion, is surprising (*see* Court File No. 68, pp. 9-11, 14). Respondent was certainly aware

24

of those factual findings, discussed in detail in his contempt conviction. *See Moncier II*, 2007 WL

1577718. It defies credibility that Respondent had not read the opinion accompanying his criminal

contempt conviction. Perhaps more troubling, however, is Respondent's expectation that the Court

would ignore Judge Greer's clearly-detailed impressions of the events, and it would blindly accept

Respondent's often evasive, revisionist, and self-serving account of his conduct - including

representations of how Judge Greer actually perceived his behavior which completely contradict

Judge Greer's own account.[20]

In relation to Exception X, Respondent's argument based upon issue preclusion is to no avail

(Court File No. 68, pp. 15-17). Magistrate Judge Lee thoroughly addressed this issue at length in

her Recommendation as it pertained to Respondent's violation of the court order and the obstruction

it caused (Court File No. 65, pp. 46-51). This Court will also make a few additional points here.

First, courts regularly give preclusive effect in disciplinary proceedings to factual findings of judges

who witnessed the conduct, because those judges, having been physically present and having heard,

seen, and reviewed the relevant evidence and conduct firsthand, are in the best position to assess the

nature, demeanor, and atmosphere involved. *See In re Peters*, --- F.Supp.2d ----, 2008 WL 1000131,

*3-4 (S.D.N.Y. Apr. 10, 2008) (providing preclusive effect in a disciplinary proceeding to factual

findings of the judge's opinion ordering sanctions).

Second, even if this Court did not give preclusive effect to Judge Greer's factual findings,

those findings would be given substantial deference for the same reasons as above. *See id.* at *4.

This concept is no different than the traditional deference an appellate court gives to the factual

---

[20]Perhaps the most egregious example of this is Respondent's submission of an affidavit from
Ms. Bethany Dumas (Court File No. 36), which is discussed in considerable detail below.

findings of a trial judge, who is best-positioned to make observations of a witness' demeanor, having been present in the courtroom during the testimony. *See United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) ("The district court's credibility findings are entitled to particular deference, because the district court is in a better position than [the appellate court] to observe a witness's demeanor.") (citing *United States v. Johnson*, 344 F.3d 562, 567 (6th Cir. 2003)).

Third, this Court's only use of Judge Greer's opinion is the factual findings as to Respondent's disrespectful and unprofessional conduct. Respondent provides no argument why Judge Greer's carefully and thoroughly written opinion somehow misrepresents how Judge Greer actually perceived Respondent's conduct. This appears to be yet another spurious argument in Respondent's attempts to deliberately delay these proceedings.

### 4. Respondent should be allowed to cross-examine Judge Greer and this Court (Exceptions VII, VIII)

Respondent argues he was denied his rights pursuant to E.D.TN. LR 83.7(h)(3) because he was not permitted to call Judge Greer as a witness for cross-examination (Court File No. 68, pp. 12-14). It is unclear what alleged deprivation Respondent believes he suffered by not having Judge Greer as a witness. As Magistrate Judge Lee correctly stated, "judges speak through their orders" (Court File No. 65, p. 42 n.16). *See Crenshaw v. Dywan*, 34 F. Supp. 2d 707, 710 (N.D. Ind. 1999) (citing *Fayerweather v. Ritch*, 195 U.S. 276, 307 (1904)). Respondent has not provided any reason why Judge Greer's written opinion, detailing his factual findings and perceptions concerning Respondent's conduct, was inadequate here.

Furthermore, Respondent argues he had a right to cross-examine this Court, because this Court issued the Show Cause Order (Court File No. 68, pp. 13-14). Respondent argues cross-examination of this Court is necessary to solicit the Court's "opinions and conclusions" on the

matter (*id.*).  This basis is confused on two grounds.  First, the Show Cause Order is, by its nature, not a conclusion, but rather the initiation of proceedings aimed at determining the appropriate conclusions to be drawn from the behavior set forth in the Show Cause Order.  Second, any information Respondent required from this Court was put forth in the Show Cause Order, which is, in fact, the entire purpose of the Show Cause Order.

### 5.    Respondent did not have twenty days notice of hearing  (Exceptions XI)

Respondent argues he did not have a twenty-day notice before the scheduled hearing pursuant to E.D.TN. LR 83.7(h)(1) (Court File No. 68, pp. 17-20).  On February 13, 2008, Magistrate Judge Lee issued an order setting the hearing date for March 5, 2008 (Court File No. 8).  The period of time between the order and the hearing was twenty-one days.  Respondent's Exception is without merit.

### 6.    Court did not sufficiently apply *In Re Snyder* (Exception XII)

Respondent claims Magistrate Judge Lee "failed to apply the correct Supreme Court standard in [*In Re*] *Snyder* [472 U.S. 634 (1985)]" (Court File No. 68, pp. 20-21).  Respondent does not actually state in what way he alleges Magistrate Judge Lee failed to do so.  To the extent Respondent seeks an assurance that this Court is familiar with the requirements of *In Re Snyder* and considers those requirements here accordingly, this Court has done so.

### 7.    Respondent sufficiently apologized for his conduct, or cannot be punished for failing to do so (Exceptions XIII)

Respondent asserts he cannot be disciplined for declining to apologize for his conduct or for giving an insufficient apology.  As an initial point, this Exception is a non-issue.  The Court considers only Respondent's conduct at the November 2006 hearing in determining whether Respondent is subject to attorney discipline pursuant to E.D.TN. LR 83.7.

27

The nature of Respondent's apology is relevant, however, to this Court's consideration of whether Respondent appreciates the unprofessional and unethical nature of his conduct, whether he is likely to repeat such conduct, and what discipline is necessarily to maintain the professional and ethical standards of attorneys in the Eastern District of Tennessee. Respondent's apology can be best explained in Respondent's own words:

> I reiterate what I said from the time I was taken into custody and that is, I deeply regret and apologize that my actions were considered by District Judge Greer to be a violation of his orders and that now, my actions have been considered by Senior [sic] District Judge Collier to be violations of the Rules of Professional Conduct.

(Court File No. 57 at 3).

Essentially, Respondent is sorry Judge Greer and the Court think Respondent did something wrong, and he is sorry he has been adversely affected by that. Nowhere in his "apology" does Respondent recognize his conduct was inappropriate nor does he express any regret for conducting himself unprofessionally, showing disrespect for the court and opposing counsel, and directly violating a court order. The Court sees Respondent's back-handed, ethereal apology as part of a larger course of conduct. As Magistrate Judge Lee aptly phrased it, "His refusal to recognize his conduct was inappropriate, unprofessional, unethical, and unbecoming an officer of the court calls into question whether Respondent is likely to correct his improper conduct without some form of meaningful discipline under Local Rule 83.7" (Court File No. 65, p. 59).

### 8. Magistrate Judge Lee impermissibly reserved issues for this Court's consideration (Exception XIV)

Respondent argues Magistrate Judge Lee was not permitted to make a recommendation that discipline was appropriate without also making a recommendation as to the appropriate disciplinary action (Court File No. 68, pp. 21-22). Local Rule 83.7(i) reads: "The judicial officer [conducting

28

the hearing] shall prepare a written recommendation which shall include a proposed disposition of the disciplinary charges." The rule clearly provides for a "proposed disposition of the disciplinary *charges*." A charge is disposed of when it is determined that discipline is warranted or not warranted. Magistrate Judge Lee recommended a disposition of the charge, writing, based upon Respondent's conduct, "the court [should] impose appropriate discipline for Respondent's conduct during the November 2006 hearing" (Court File No. 65, p. 61). It is now the obligation of this Court to determine whether Magistrate Judge Lee's recommendation should be accepted, and if so, what the appropriate disciplinary action is.

### 9.    Adopted and renewed exceptions (Exceptions XV - XIX)

Respondent superficially argues numerous "adopted and renewed exceptions to pre-hearing rulings" (Court File No. 68, pp. 22-25). These exceptions would be unlikely to make any legal or logical sense even if Respondent had dedicated more than a few cursory, vague sentences to each exception. Due to Respondent's failure to substantiate his assertions with law or reason, the Court is unable to fully address them. *See McPherson*, 125 F.3d at 995-96. However, the Court will endeavor to address them to the best of its ability, despite Respondent's lack of explanation of the clear contours, substance, and legal and factual support for the exceptions.

Exception XV. Respondent argues a Magistrate Judge does not have jurisdiction pursuant to 28 U.S.C. § 631 to recommend discipline (Court File No. 68, p. 22). This statute is inapplicable here. Federal courts have the authority to adopt and enforce standards of conduct for the attorneys practicing before them. *See, e.g.*, *NASCO*, 501 U.S. at 43. This Court has done so and, in accordance with E.D.TN. LR 83.7(g), permits appointment of a judicial officer, such as a Magistrate Judge, to investigate potential misconduct, conduct disciplinary hearings, and issue a written

recommendation.

Exception XVI. Respondent argues Magistrate Judge Lee and this Court harbor some secret bias against him (Court File No. 68, p. 22). Respondent has shown no evidence or valid basis for such bias, nor does any exist.

Exception XVII. Respondent appears to be raising two objections here. First, Respondent argues he was unfairly saddled with a burden of proof to explain his conduct (Court File No. 68, pp. 22-23). The transcript of the November 2006 hearing is clear and convincing evidence of what was said at that hearing, which Respondent does not appear to dispute. Judge Greer's factual findings in Respondent's criminal contempt conviction are clear and convincing evidence of Judge Greer's perceptions of what occurred at the hearing. Rather than being saddled with a burden of proof, Respondent was provided an opportunity to explain his conduct at that hearing to the Court.

Second, Respondent's argument seems to be asserting a belief that a show cause order is in some way an inadequate basis in which to proceed with a disciplinary hearing (*see id.*). A show cause order is the method by which disciplinary proceedings are initiated in this court, *see* E.D. TN. 83.7(b), and provides Respondent with a notice of the allegations involved. All the evidence upon which the Show Cause Order was based was available to Respondent at all times during these proceedings. The Show Cause Order provided adequate notice to Respondent of the allegations and basis of those allegations.

Exception XVIII. Respondent claims he had no right to present evidence and witnesses, pursuant to E.D.TN. LR 83.7(h)(3) (Court File No. 68, p. 24). This is false. In fact, Respondent was permitted to call witnesses, and Respondent was clearly informed of this by Local Rule 83.7(h)(3) and Magistrate Judge Lee's order of February 13, 2008 (Court File No. 8, p. 2) ("[Respondent] is

entitled to be represented by counsel, to present witnesses and other evidence, and to confront and cross-examine witnesses, if any."). Respondent was the only witness present at the hearing; no other witnesses were present for any of the two-day hearing. Nevertheless, Magistrate Judge Lee still permitted Respondent to testify as to what he expected other witnesses would say. This testimony, on the whole, was cumulative, when relevant, and proved immaterial to the ultimate decision. In addition, Respondent was permitted to submit evidence after the hearing, and filed nearly two dozen declarations from other witnesses. These witnesses possess no personal knowledge of the November 2006 hearing, as none of the witnesses are claimed to have been present, and are thus not material to that issue.

Exception XIX. Respondent summarily lists numerous other exceptions which he calls "defenses," including double jeopardy and collateral estoppel and - presumably in an attempt to excuse or justify his misconduct - necessity, coercion, and entrapment by Assistant United States Attorney M. Neil Smith (Court File No. 68, p. 24). This Court cannot properly address arguments which are nothing more than invocations of legal doctrines without any explanation of their application to this case. *See McPherson*, 125 F.3d at 995-96. However, even if Respondent had actually argued these defenses to any significant degree, none of these defenses can excuse or justify Respondent's conduct throughout the November 17, 2006 hearing. They do not somehow erase the disrespect and unprofessional behavior he exhibited; his failure to obey a direct order of the Court; or, indeed, his subsequent refusal, as these defenses further show, to recognize and take steps to assure he does not repeat his unprofessional and unethical conduct in the future.[21]

---

[21]A few of Respondent's conclusory objections indicate Respondent wishes to argue his conduct in continuing to interrupt Judge Greer, despite being ordered not to do so, was somehow either justified ("justification that Respondent was performing a duty required of him by law") or

The Court feels compelled to address the shifting, post-hoc rationalizations Respondent has made in attempting to avoid the consequences of his actions. Respondent, as presumably is the unstated basis of his justification defenses (*see* Court File No. 68, p. 24),[22] has asserted he was either somehow obligated to speak to his client in violation of the order of the court to refrain from continuing to interrupt Judge Greer (*e.g.*, Tr. 127), or he was otherwise seeking clarification of Judge Greer's unequivocal order not to speak (*e.g.*, Tr. 133). The result of either argument is that Respondent believes he did nothing unprofessional or unethical.

excused ("necessity required to protect the interest of Respondent's client; coercion by his duty to protect interest of Respondent's client; and entrapment by AUSA M. Neil Smith's letter of November 16, 2008") (Court File No. 68, p. 24). These arguments, in addition to being presented to this Court as nothing more than conclusions with no factual or legal support, are wholly deficient in two other major respects.

First, all orders of the court must be followed by the parties before it. *Maness v. Meyers*, 419 U.S. 449, 459 (1975) (citing *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947) ("[A]n order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings."). "Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt *even if the order is ultimately ruled incorrect.*" *Id.* at 458-59 (emphasis added); *accord Walker v. City of Birmingham*, 388 U.S. 307, 320-21 (1967) (". . . in the fair administration of justice no man can be judge in his own case, however exalted his station, however righteous his motives, and irrespective of his race, color, politics, or religion."); *Howat v. Kansas*, 258 U.S. 181, 189-90 (1922); *Worden v. Searls*, 121 U.S. 14, 26-27 (1887). Respondent's implication that he was somehow allowed to or justified in violating the court's order is wholly without merit.

Second, Respondent's justifications and excuses, to the extent they might relate to the conduct here, would seem to only relate to Respondent's final act of misconduct at the November 17, 2006 hearing. Even if Respondent believes the incorrect notion that he was in some way legally-compelled to disobey the court's order to stop interrupting at the end of the hearing to prevent his client from answering Judge Greer's questions concerning a potential conflict (a conflict Respondent himself raised, then later disavowed without explanation), that leaves unaddressed the other unprofessional and unethical conduct exhibited by Respondent and addressed here - i.e. his repeated interruptions and accusations made against the court and the Assistant U.S. Attorney throughout the hearing.

[22]Again, Respondent provides no factual or legal basis for his justification arguments, which span less than one full sentence (Court File No. 68, p. 24), and this Court cannot address what is not presented to it. *See McPherson*, 125 F.3d at 995-96.

However, Respondent also argues his allegedly professional, ethical, and duty-bound conduct was a result of "entrapment by AUSA M. Neil Smith's letter of November 16, 2008" (Court File No. 68, p. 24) and was a product of being "goaded" by the prosecution (Court File No. 13, p. 26) (where Respondent asserted being goaded as an affirmative defense for his misconduct).

It speaks volumes of Respondent's lack of respect for this court when he asserts, "I believed I had a duty to do what I did, and I would have done it before any district court judge" (Tr. 127), only to then immediately blame opposing counsel for somehow entrapping or goading him into behaving in a way he then seems to concede was inappropriate (Court File Nos. 13, p. 26; 68, p. 24). Either Respondent is arguing he was tricked or goaded into conduct he believed was ethical, or he is asserting two contradictory positions to this Court. Such conduct is not only exasperating but also incredibly disappointing from a member of the bar of the Eastern District of Tennessee.

Exception XX. Respondent argues this Court cannot proceed with any disciplinary determination or action against him until the Sixth Circuit Court of Appeals has made a final ruling on his criminal contempt conviction (Court File No. 68, pp. 24-25). As previously and repeatedly stated, this Court's disciplinary proceeding and determination is independent of any criminal contempt conviction. The Sixth Circuit, in its March 5, 2008 denial of Respondent's motion to stay these proceedings pending his appeal, wrote: "The disciplinary proceedings now pending before the district court are distinct from this appeal from a criminal conviction. [Respondent] does not cite any legal authority that there is a requirement that the appeal of the criminal contempt proceedings must be concluded before the disciplinary proceedings can go forward." Furthermore, whether the Sixth Circuit determines Respondent's conduct satisfied the legal requirements to establish criminal contempt pursuant to 18 U.S.C. § 401(1) and (3) has no bearing on the determinations of this Court

33

pursuant to E.D.TN. LR 83.6, 83.7.

Respondent further argues Magistrate Judge Lee cannot rely on the factual findings of Judge Greer, concerning Judge Greer's own, first-hand perception of Respondent's conduct, because those findings are on appeal. Respondent's argument is absurd; the Sixth Circuit will not, nor could it logically, "overturn" Judge Greer's own factual account and perceptions of the offensive nature of Respondent's behavior. *See Moncier II*, 2007 WL 1577718.

### 10. Conclusion

As explained above, Respondent's Exceptions to the Recommendation (Court File No. 68) are devoid of merit and denied by this Court.

### B. Response to Order to Show Cause (Court File No. 13)

On February 25, 2008, Respondent filed the response required by the Show Cause Order. The response is twenty-seven pages in length and, while Respondent does address the factual allegations in the Show Cause Order, he often does not provide a specific admission or denial of the factual allegations. Those factual allegations to which he does not offer a specific denial the Court will deem to be true and admitted.

As to the factual allegations in the Show Cause Order, Respondent responded as follows:

**(1) Respondent repeatedly interrupted or spoke over the presiding judge. Allegation III**[23]

Response III. 4. "Respondent admits that the transcript reflect [sic] uncompleted sentences by both the District Judge and Respondent." (*Id.*, p. 17).

---

[23]Respondent uses Roman numerals to label his responses. For the sake of clarity, the Court will use Respondent's system.

**(2) Respondent accused the prosecution of engaging in a conspiracy to prevent him from trying cases due to his success in past trials. Allegation IV**

Response IV. 5. "Respondent avers and will offer evidence at a hearing that Respondent had a reasonable basis to make the statements cited in the Show Cause Order pertaining to AUSA Smith and the prosecution team in Greeneville Division (sic) of this Court." (*Id.*, p. 18).

**(3) Respondent threatened to abandon client. Allegation V.**

Response V. 2. "Respondent admits making the cited statement." (*Id.*, p. 18).

**(4) Respondent disobeyed order of Judge Greer. Allegation IX.**

Response IX. 2. "Respondent admits the transcript of November 17, 2006 and the pages cited in the Show Cause Order. 3. Respondent avers that the transcript of November 17, 2006 speaks for itself." (*Id.*, p. 25).

Based upon Respondent's admissions or failure to deny the above factual allegations, the Court deems Respondent to have admitted (1) he repeatedly interrupted and spoke over Judge Greer, (2) he accused the prosecution of engaging in a conspiracy against him,[24] (3) he threatened to abandon his client, and (4) he disobeyed a direct order of Judge Greer.

In addition to the above-quoted passages, Respondent's response also includes a great deal of rambling, irrelevant material. Respondent goes on for many pages discussing the prosecution of Harold Grooms and others who are unrelated to the inquiry here. He spends time discussing what he perceives as bias against him by government agents.

---

[24]Before Magistrate Judge Lee, Respondent quibbled over whether he used the word conspiracy but conceded he had claimed the prosecuting attorney had engaged in concerted action against him. This amounts to a claim of a conspiracy. By this, he admits he had accused opposing counsel of professional misconduct. Magistrate Judge Lee found that this factual allegation is accurate (Court File No. 65, pp. 31, 43).

In a remarkable admission, Respondent in his (Second)[25] Affirmative Response 3, says: "Respondent affirmatively asserts that his conduct on November 17th was goaded by wrongful conduct of the prosecution team in Greeneville Tennessee (sic)" (Court File No. 13, p. 26). Trial litigation is inherently stressful and attorneys will often face provocations. However, an attorney can never allow himself to be "goaded" into professional misconduct. One of the primary reasons there are professional standards is so, in the heat of battle, the professional exercises discipline and does not resort to unethical and unprofessional behavior. To the extent an attorney does not possess the necessary discipline to withstand "goading," that attorney may not be fit for the practice of law.

## C.    Respondent's Motions and Filings

Because Respondent is alleged to have engaged in unethical and unprofessional conduct, having disobeyed a direct order of a member of this court and demonstrating disrespect for the institutional role of the court, the Court read with interest Respondent's motions and filings in these proceedings. Facing a disciplinary proceeding that could lead to his disbarment, one would think Respondent would do his best to demonstrate his fitness to remain a member of this bar, demonstrate adherence to the highest standards of the profession, and clearly demonstrate respect for the role of the trial judge.

Yet, having reviewed his filings, it is evident Respondent harbors a disrespect for the institutional role of the judge. This disrespect is so ingrained and deep-seated that Respondent seems unable to realize its full extent, and he expresses it in ways that are clearly detrimental to himself. Respondent's unfortunate attitude of disrespect has no bearing on the question of whether

---

[25]Respondent includes two affirmative responses numbered "3." The Court refers to the latter of the two.

Respondent violated Local Rule 83.7, but it is highly relevant in considering the appropriate reaction of this Court in light of the likelihood Respondent would repeat similarly unprofessional and disruptive behavior in the future.

Respondent filed a multitude of motions and other submissions in this matter. Many of them were frivolous in that they were devoid of any legal or factual support for his asserted position;[26] appeared not to have been presented for any proper purpose; and appeared to have been filed solely for the purpose of unnecessarily delaying and prolonging these proceedings.[27] The extremely high number of such motions and filings compels the Court to conclude they were vexatious.[28] Moreover,

---

[26]Tennessee Rules of Professional Conduct, Rule 3.1 provides: "A lawyer shall not bring or defend or continue with the prosecution or defense of a proceedings, or assert or controvert or continue to assert or controvert an issue therein, unless after reasonable inquiry the lawyer has a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law."

[27]Tennessee Rules of Professional Conduct, Rule 3.2 provides: "A lawyer shall make reasonable efforts to expedite litigation."

[28]Although this is not a civil case, Rule 11 of the Federal Rules of Civil Procedure does provide additional guidance for the expectations placed on attorneys practicing in federal court. Rule 11 provides in pertinent part:

By presenting to the court a pleading, written motion, or other paper–whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

37

the Court concludes many of these motions or filings were filed in bad faith. For illustrative purposes, the Court will discuss some of Respondent's motions. By discussing these particular motions, the Court is not suggesting that other motions and filings were proper.

### 1. Motion for Relief From Notification Provision of January 17, 2008 Show Cause Order (Court File No. 3)

In this motion, filed just before his substantive response was due, Respondent sought to have the Court remove and reconsider the provision of the Show Cause Order that Respondent notify the judicial officers in this district, before whom he had pending cases, of the initiation of this action. Respondent mischaracterized the Court's order as requiring an ex parte communication with judges of this court. Respondent also argued the notification to the other judges would be "the equivalent of the publication to these Districts (sic) judicial officers of the proceedings contrary to the confidentiality provisions of EDTN (sic) Local Rule 83.7."[29] Respondent mischaracterized a notice to a judge of a pending disciplinary action as a communication regarding the merits of the case before the judge. Finally, Respondent failed to recognize or mention that the very provision of the local rule providing for confidentiality explicitly states the court can order disclosure. Respondent offered no legal authority nor logic for his request.

Respondent's motion is disrespectful, dismissive, and baseless. First and foremost, Respondent was ordered to inform the other judges, before whom he had pending cases, in the Show Cause Order, issued on January 17, 2008 (Court File No. 1). This Court assumed Respondent would promptly obey the Court's order. Instead, Respondent filed a motion eighteen days later, asserting

---

[29]That the confidentiality provisions of the Local Rule are designed to protect the attorney subject to disciplinary action is clearly demonstrated by this effort of Respondent to benefit from the protections afforded by these provisions. To prevent even other judges of this court from knowing of the initiation of this action, Respondent sought refuge in the confidentiality provisions.

baseless and misinformed reasons why he believed he did not have to inform the other judges (*see* Court File No. 3). This is a perfect example of Respondent's complete lack of appreciation for how to conduct himself before this Court - a Court order, ordering an attorney to do something, is not the first round of negotiations nor is it an invitation for an argument.

In denying the grounds put forth in Respondent's motion, the Court characterized the motion as specious, an extremely harsh appellation that is rarely used by this Court. Respondent's arguments were completely baseless (*see* Court File No. 5, pp. 3-4). First, Respondent ignored that the judges he should have notified are all judges of this court and thus constitute the court itself. The judges of this court are not foreign bodies, so Respondent was not ordered to notify any third parties outside of the confidentiality envisioned by the local rules.

Second, this demonstrates the inconsistency Respondent so often exhibits in his dealings with the court.[30] Later, in his Exceptions to Magistrate Judge Lee's Recommendations, Respondent takes issue with the confidentiality of the proceedings, prior to removal of the confidentiality immediately following Respondent's submission of a signed waiver of confidentiality (Court File No. 68, pp. 4-5). Yet, in this earlier motion, Respondent not only did not ask for that confidentiality to be waived, but also improperly attempted to use the confidentiality of the disciplinary proceedings to justify disobeying an order of this Court. Aside from the unprofessional and potentially unethical nature

---

[30]The Show Cause Order references another example (Court File No. 1, p. 2), which was also raised by Judge Greer.

> Throughout the November 17 hearing, Moncier repeatedly requested the Court to perform an inquiry or to permit Vassar to address the Court, which makes Moncier's assertions that he "had no idea" why the Court was inquiring of Vassar even more baffling.

*See Moncier II*, 2007 WL 1577718 at *5 n.7.

of such contradictory posturing, such behavior leaves courts at a loss as to what position Respondent maintains at any given time.

In considering the lack of merit of this motion along with the other motions and submissions filed subsequently, the Court finds this motion was filed in bad faith and is frivolous. It was not filed for any proper purpose or supported by any legal basis, but rather was filed for the purpose of causing unnecessary delay[31] and prolonging these proceedings.

Even when the Court pointed out the lack of merit of this motion, Respondent did not move to withdraw the motion nor did he apologize for filing it.

### 2. Motion for Disclosures (Court File No. 4)

In this motion, Respondent sought information from the Court regarding "communication ... received other than from the pleadings and proceedings on January 9, 2008, pertaining to the Show Cause Order in this matter or the case of [Lee Almany]." This motion is bizarre and largely incomprehensible. Respondent was inarticulate and unclear as to what he was seeking and what relevance it had to the Show Cause Order. Furthermore, Respondent did not cite any legal authority for his request, obviously because there is no legal authority which permits Respondent's request.

Regardless of the purpose of Respondent's desired search, it is abundantly clear Respondent had no authority to take discovery of a judicial officer presiding over a proceeding involving him personally. If litigants were permitted to engage the presiding judicial officer in a proceeding in discovery, the judicial officer could not perform his or her responsibilities. This is another

---

[31]On the same day Respondent filed this motion, he also filed his Motion For Extension (Court File No. 2). In this motion, Respondent asked for an additional twenty days after the Court acted on his motions to file his required response to the Show Cause Order. By not filing his response in a timely fashion and by filing these non-meritorious motions, Respondent achieved his purpose in delaying his response without ever obtaining court approval for the delay.

40

indication of the disrespect Respondent harbors for the institutional role of the judge, a disrespect to which Judge Greer also alluded. *See Moncier II*, 2007 WL 1577718 at *9, *10; *Moncier I*, 2007 WL 1206731 at *3.

Respondent's request for information concerning Mr. Almany is confusing; Respondent was not serving as counsel in the case and ethically could not have a professional relationship with Mr. Almany.[32] As such, the events of Mr. Almany's case were of no concern to Respondent, nor did Respondent have any standing to raise any issue regarding Mr. Almany.

It is also peculiar and rather troubling that Respondent then proceeded to accuse district judges of talking about him, with a lingering insinuation that discussions between district judges are somehow inherently nefarious. "Respondent has received reports that Senior Judge Leon Jordan and deceased Senior Judge James Jarvis[33] had conferences with Judge Greer after November 17, 2006 pertaining to Respondent's contempt of court charges and potential disciplinary action." (Court File No. 4, unnumbered p. 4). Respondent does not favor us with the sources of these reports, nor does Respondent provide any detail as to why he believes any conversations, if they occurred, were somehow improper or even germane to these proceedings.[34] As is evident from this and other

---

[32]Respondent had represented Mr. Almany in a criminal proceeding. *See United States v. Almany*, No. 1:08-cr-1, formerly No. 2:07-cr-88 (E.D. Tenn. filed Sept. 11, 2007). After conducting an evidentiary hearing, the Court determined that Respondent labored under a conflict of interest and his continued representation of Mr. Almany would detract from the public perception of the integrity of the federal judicial system. Therefore, the Court disqualified Respondent and ordered him and his firm to have no further professional contact with Mr. Almany. Mr. Almany was appointed a very experienced, competent, and conflict-free counsel. Mr. Almany has subsequently entered a plea of guilty.

[33]Senior Judge Jordan is resident in the Knoxville Division of this District, as was Senior Judge Jarvis, who has since passed away.

[34]Based upon the contents of Respondent's motion, Respondent appears to be insinuating that something sinister and nefarious took place between these judges. Had he stated his insinuation

41

filings, Respondent seems to believe that vague, unfounded attacks on the judiciary somehow make Respondent's misconduct more acceptable or less deserving of sanction.

This is another motion that lacks any legal basis.

In considering the lack of merit of this motion, along with the other motions and submissions filed subsequently, the Court finds this motion was filed in bad faith and was frivolous. It was not filed for any proper purpose or supported by any legal basis, but rather was filed for the purposes of causing unnecessary delay and prolonging these proceedings.

### 3. Motion to Dismiss Without Prejudice (Court File No. 5)

Respondent moved the Court to dismiss the Show Cause Order. The basis for this motion was Respondent's contention the Eastern District of Tennessee has no authority to discipline members of its bar, because it somehow delegated that authority to the state of Tennessee. Respondent cited absolutely no authority for this incredible assertion. Respondent also failed to cite any of the abundant and readily available authority conclusively demonstrating the court has such authority.[35]  Respondent ignores he was admitted to the bar of this court by the judges of the Eastern District of Tennessee, not by the Tennessee Board of Professional Responsibility. By filing a motion in federal court, the attorney has an obligation to refrain from filing matters without a legal basis. This is the case here. The Court can only conclude Respondent's purpose was to delay and

---

explicitly, this Court would have needed to further inquire into what would have been yet more unprofessional, unethical misconduct.

[35]This ethical failure on the part of Respondent to bring to a judge's attention contrary authority is not new. Judge Greer, in discussing allegations by Respondent that he was biased, remarked that certain statements relied upon by Respondent "concern[ed] such things as [Respondent's] ethical obligation to call to the Court's attention precedent contrary to his stated position ...." *Moncier I*, 2007 WL 1206731 at *3.

prolong these proceedings, and this motion was filed in bad faith.

Respondent also represents he made a report to the Tennessee Board of Professional Responsibility and that Board has under consideration some matters pertaining to Respondent. The Court assumes Respondent has made some type of report to the Board, but the Court has no way of knowing precisely what matters are before the Board of Professional Responsibility. In so far as the record shows, Respondent has not sought to make whatever is before the Board public.

However, even if the Board is considering some matters that may coincide with the allegations in the Show Cause Order, as the Court said in the Order disposing of this motion, "[w]hether Respondent violated the Tennessee Rules or Professional Conduct while practicing law in a federal court in the Eastern District of Tennessee, and whether his conduct brought the federal court into disrepute are concerns of the utmost importance to *this* Court" (Court File No. 6, p. 2). This Court has a superior and paramount interest in matters pertaining to a member of its bar and proceeds accordingly.

Respondent also alleges Judge Greer "filed with the BOPR a complaint against Respondent that includes the very conduct that is the subject of this Court's Show Cause Order" (Court File No. 5, pp. 2-3.) The Court also does not know whether this is true,[36] but again, this Court has a fundamental interest in regulating its own bar and the behavior of its members.

**4.      Motion for Hearing and for Authority to Issue Subpoenas (Court File No. 9)**

In this motion, Respondent made his request, albeit late, pursuant to Local Rule 83.7(d)(4),

---

[36] Judge Greer, in addressing an accusation by Respondent that Judge Greer referred charges against Respondent to the Tennessee Board of Professional Responsibility, noted that he merely "provided information to the Board concerning Mr. Moncier's conduct in this Court." *United States v. Almany*, 2008 WL 56024, *1 n.3 (E.D. Tenn. Jan. 2, 2008).

43

for a hearing on the Show Cause Order. Respondent also sought authorization to issue subpoenas to a number of individuals, including: United States District Judges Thomas Varlan and J. Ronnie Greer, several state court judges, and counsel for the Tennessee Board of Professional Responsibility. Respondent wanted testimony from these individuals to establish he did not engage in unprofessional conduct in proceedings before them and that there have not been previous complaints made to the Board of Professional Responsibility regarding "conduct similar to the conduct cited in the show cause."

Magistrate Judge Lee properly denied this motion as it did not claim these witnesses, except for Judge Greer, possessed any information or would be asked to testify about anything pertaining to the subject matter of the Show Cause Order (Court File No. 12, p. 4). With respect to testimony from Judge Greer, Magistrate Judge Lee clarified that the transcript of the November 17, 2006 hearing would be available at the hearing, judges speak through their opinions, and Judge Greer had issued one (*id.*).

Asking to subpoena witnesses with no pertinent information was a burden on the court and served no purpose other than to delay these proceedings.

### 5.     Motion for Jury Trial (Court File No. 16)

Respondent filed a demand for a jury trial. Commendably, he did admit he had no law to support the demand. "Respondent does not have a case holding there is a right to a jury trial on a Court Show Cause Order ...." (Court File No. 16, unnumbered p. 2). While it is commendable that in this instance, as opposed to many others, Respondent admitted no legal authority supports his position, it is not commendable that Respondent still failed to acknowledge the unanimity in the case law directly rejecting his position. *See, e.g.*, *Matter of Jacobs*, 44 F.3d 84, 89 (2nd Cir. 1994)

44

(rejecting the argument that an attorney facing disciplinary proceedings has a right to a jury trial and other federal constitutional protections for criminal prosecution under the Fifth, Sixth, Seventh, and Eighth Amendments); *In re Smith*, 123 F. Supp. 2d 351, 354 (N.D. Tex. 2000) (rejecting the contention an attorney facing a disciplinary hearing is entitled under the Sixth Amendment to a jury trial or full evidentiary hearing); *In re Lehtinen*, 332 B.R. 404, 413 (B.A.P. 9th Cir. 2005) ("An attorney subject to disciplinary action is not entitled to the presumption of innocence, the 'beyond a reasonable doubt' burden of proof, confrontation of witness, or a jury trial.") (citation omitted).

Respondent did not cite any of the cases above, or any of the numerous others which explicitly state there is no right in attorney disciplinary hearings to a jury trial. These cases are not difficult to locate. Respondent was obligated ethically to bring these cases to the Court's attention. Respondent failed to do so.

Respondent has no legal basis for this demand. It is yet another frivolous filing.

In considering the lack of merit of this motion along with the other motions and submissions filed previously and subsequently, the Court finds this motion was filed in bad faith and is frivolous. It was not filed for any proper purpose or supported by any legal basis, but rather was filed for the purpose of causing unnecessary delay, and prolonging these proceedings.

### 6.     Objections and Motion to Revise (Court File No. 17)

Respondent here objected to the clarification provided by the Court and Magistrate Judge Lee that the hearing, in determining whether a violation occurred, would address only the conduct set out in the Show Cause Order. Respondent objected to being constrained to addressing only the accuracy of the factual allegations in the Show Cause Order, rather than being give free reign to discuss a litany of irrelevant events, unfounded accusations, and vague conspiracy theories as part

45

of yet another strategy to delay the proceedings. Respondent then asked that the hearing be conducted in accordance with Local Rule 83.7, which is precisely what occurred.

There was no purpose served by this motion other than to waste the Court's time and resources.

### 7.     Motion to Abstain (Court File No. 18)

In yet another attempt to delay the proceedings, Respondent moved the Court to stay any determinations of this matter until the Sixth Circuit court acts on his appeal of his criminal contempt conviction.[37] Respondent incorrectly stated the Sixth Circuit will consider and resolve some of the issues presented in this case. This is not true. The Sixth Circuit is considering a criminal matter. While the underlying conduct may overlap to some degree in the criminal conviction and in this disciplinary proceeding, the issues are distinct. The Sixth Circuit is not considering whether Respondent engaged in unethical conduct that tends to bring the court and the bar into disrepute. Nor is the Sixth Circuit considering whether Respondent, by interrupting Judge Greer and threatening to abandon a client, engaged in unethical conduct that tends to bring the court and the bar into disrepute. Furthermore, the Sixth Circuit is not considering whether Respondent violated any of the provisions of the Tennessee Rules of Professional Conduct.

Magistrate Judge Lee correctly denied this motion (Court File No. 23, pp. 2-3). This motion was not brought in good faith, and the Court finds it was filed for the purpose of unnecessarily delaying these proceedings.

---

[37]Such motions by attorneys facing disciplinary action in federal courts are not unusual. *See, e.g., In re Peters*, --- F.Supp.2d ----, 2008 WL 1000131 at *3 (An attorney facing disciplinary action filed submissions disputing charges on the merits by asserting that the underlying proceedings were improper, unfair, biased and lacking in due process. Attorney also argued that, since an appeal was pending before a court of appeals, no action should be taken until the appeal was complete.)

46

### 8.    Objections to February 11, 2008 Order (Court File No. 19)

Respondent in this filing again sought discovery from a judicial officer presiding over his case.  Respondent sought from Magistrate Judge Lee disclosure of "all communications the Court has had (sic) received from Chief Judge Collier; any other Judge; from any investigation conducted by this Court to date; or from any other person pertaining to Respondents case."  Respondent provides no legal authority for such a motion, nor any reasonable explanation for why such an extraordinary request would be seriously considered.

Permitting a litigant to pursue discovery from the presiding judicial officer in a litigant's case would detract from and make impossible the institutional role that the officer must perform.  Discovery is subject to great abuse and would quickly descend into disputes over the discovery itself, instead of the merits of the proceedings.

This motion was improper and demonstrates disrespect for the institutional role of judge.

### 9.    Objection and Motion to Disqualify a Court Subordinate to the Complainant, Chief Judge Collier (Court File No. 21)

Respondent, targeting Magistrate Judge Lee, "move[d] to disqualify, this Court, and any Court that subornate (sic) to, or under the supervision of, the EDTN LR "complainant' who, in this case is Chief Judge Curtis Collier" (Court File No. 21, unnumbered p. 1).  Respondent based this motion upon his mistaken assertion that "Chief Judge Curtis Collier is the Complaintant (sic) in this case" (*id.*).  As explained earlier, there is no complainant in this case, as it is defined in the Local Rules.  *See* E.D.TN. LR 83.7(b).  Respondent's argument is a mischaracterization of the local rules.

Respondent also erroneously referred to the conduct described in the Show Cause Order as "Chief Judge Collier's opinions and conclusions" (Court File No. 21, unnumbered p. 2).  Again, Respondent mischaracterized the local rules and the proceedings.  The Show Cause Order is issued

47

to provide an attorney the opportunity to deny, correct, or explain the content of the Show Cause Order *prior* to any conclusions being made. Respondent's argument is either recklessly uninformed or purposefully disrespectful to the court and the proceedings.

Respondent then challenged the permissibility of Magistrate Judge Lee serving as the judicial officer in the proceedings, despite that her doing so is in conformity with E.D.TN. LR 83.7(g). Respondent cites several federal statutes, none of which is applicable to the proceedings here.

Magistrate Judge Lee properly denied this motion (Court File No. 23, p. 6). It was without any legal basis or factual foundation, and was not filed for any proper purpose.

### 10. "Motion to Dismiss the Show Cause Order for Failure to Comply with EDTN LR 83.7(b)" (Court File No. 24)

In this motion, Respondent again falsely asserts this Court is the complainant in the case within the terms of Local Rule 83.7. As explained earlier in this memorandum and as is clear from a reading of the rule itself, a complainant, pursuant to Local Rule 83.7(b), is a party to an action or counsel to a party to an action. No party or counsel filed a complaint in this proceeding. Therefore, there is no complainant. *See* E.D.TN. LR 83.7(b). Respondent's motion is without foundation and was properly denied by Magistrate Judge Lee (Court File No. 29).

In considering the lack of merit of this motion along with the other motions and submissions filed previously and subsequently, the Court finds this motion was filed in bad faith and is frivolous. It was not filed for any proper purpose or supported by any legal basis, but rather was filed for the purpose of causing unnecessary delay, and prolonging these proceedings.

### 11. "Motion for EDTN LR 83.7(h)(1) Minimum of Twenty Days For The Hearing" (Court File No. 27)

After Respondent successfully delayed the filing of his response and delayed the date for a

hearing through his tactics of frivolous filing, Respondent asked for an additional twenty days from his receipt of Magistrate Judge Lee's February 27, 2008 order. Magistrate Judge Lee properly denied this motion (Court File No. 29, pp. 3-4). This motion was just another indication of the efforts of Respondent to delay and prolong this disciplinary matter.

### 12. Respondent Sought Stay in Sixth Circuit

In yet another effort to delay and sidetrack these proceedings, Respondent filed a motion in his appeal of his criminal contempt conviction, seeking a stay from the Sixth Circuit court of these disciplinary proceedings, despite the fact that neither the final disposition of his appeal nor the final disposition of these proceedings would have any impact on the other. His motion was rejected by the Sixth Circuit on the same day it was filed (Court File No. 65, p. 4 n.3).

### 13. Declarations Filed in Support of Respondent (Court File No. 35)

Respondent filed a large number of affidavits, which he calls declarations, on his behalf that largely amount to character references. Magistrate Judge Lee commented on these in her Recommendation (Court File No. 65, pp. 36 - 38). Magistrate Judge Lee accurately summarized the contents of these declarations. The Court has given these character references the appropriate weight they deserve. However, the Court finds it necessary to comment further on two of the submissions, those of Ann Short Bowers and Bethany Dumas.

The Court first addresses the submission of Ann Short Bowers (Court File No. 37). The Court is unable to give any credence to Ms. Bowers' declaration. First, Ms. Bowers confines her opinion to the Tennessee Code of Professional Conduct and completely ignores this court's requirement that attorneys not engage in unethical conduct that tends to bring the court or the bar

into disrepute, E.D.TN. LR 83.7(a).[38] Since she completely ignores one of the two standards this court uses for measuring an attorney's conduct, her ultimate opinion as to whether Respondent is fit to remain a member of this bar or whether his conduct warrants discipline is meaningless.

Second, the Court has difficulty accepting Ms. Bowers opinion because she bases it in part on factual assertions that are completely false. Ms. Bowers says the Court relied upon the superceded Tennessee Code of Professional Responsibility. This is simply false and, equally disconcerting, is without any recognizable foundation, because Ms. Bowers was not in the room when the Court penned the Show Cause Order; she did not contact the Court to inquire whether the outdated Code was used; and nothing in the Show Cause Order indicated the outdated Code was used. The Court finds it impossible to seriously credit the testimony of a person who based her opinion on unexplained and inaccurate suppositions. Respondent should not have submitted this affidavit with this assertion. A casual review of the filing should have shown that Ms. Bowers had no basis for such a statement. It was at a minimum reckless on the part of Respondent to have filed her affidavit containing this false assertion.

Ms. Bowers also includes in her affidavit an assertion this Court filed a complaint against former attorney Edward Slavin[39] with the Board of Professional Responsibility (Court File No. 37,

---

[38]Ms. Bowers, in addition to failing to consider the prong for unethical conduct of the court's local rule, also failed to consider the generally recognized standards of ethical and professional behavior in this district; failed to consider or address any of the many federal cases cited in this opinion that define as unethical and unprofessional conduct the very conduct in which Respondent engaged; and failed to consider the ethical and professional standards adopted by the American Bar Association, the American College of Trial Lawyers, and other similar professional organizations.

[39]Mr. Slavin was a defendant in a civil collection action before this Court several years ago. *Lockheed Martin Energy Systems v. Slavin*, 190 F.R.D. 449 (E.D. Tenn. 1999). Mr. Slavin was also an attorney licensed in Tennessee, but was not a member of the bar of the Eastern District of Tennessee. This Court found Mr. Slavin had violated Rule 11 of the Federal Rules of Civil

50

unnumbered pp. 4-5). (Mr. Slavin was not a member of the bar of the Eastern District of Tennessee.) This assertion is also false. However, the Court is more forgiving here because Ms. Bowers may have obtained that incorrect information from the Board of Professional Responsibility. The fact is, however, this Court has never made a complaint against anyone to the Board of Professional Responsibility. Again, Ms. Bowers' false assertions and assumptions undermine the entirety of Ms. Bowers' opinion and destroy any credibility one might wish to lend to it.

Last, Ms. Bowers bases her opinion upon the practice of attorneys in Tennessee courts and not members of the bar of the Eastern District of Tennessee. A great number of the members of the bar of this court are not Tennessee attorneys. By confining herself solely to Tennessee attorneys, Ms. Bowers ignores the practice of a large number of the members of this bar who are not licensed to practice in Tennessee state courts. Since this Court has been Chief Judge, Ms. Bowers has never engaged the court in a discussion of the applicable standards for attorneys who are members of the bar of this court. Nor has she ever been involved in a disciplinary proceeding conducted under Local Rule 83.7 while this Court has been Chief Judge. Assuming one could overcome the other problems with her opinion, her affidavit may have been more credible if she had been involved in some manner in acquainting herself with the applicable standards and expectations required of attorneys admitted to this bar. As a result, Ms. Bowers' opinion is not relevant and of no benefit to this Court.

---

Procedure due to the nature and content of some of his filings. The Court ordered the Clerk of Court to forward its opinion to the Tennessee Board of Professional Responsibility for its information. 190 F.R.D. at 461. However, this was not a complaint and the Court did not have any direct contact with the Board of Professional Responsibility seeking the initiation of any disciplinary action against Mr. Slavin. To give Ms. Bowers the benefit of the doubt, however, the Court is aware that sometimes the Board of Professional Responsibility erroneously lists judges that merely provide information as having filed a complaint. Mr. Slavin was later disbarred by the Tennessee Supreme Court.

The Court also is compelled to comment on the submission of Bethany Dumas (Court File No. 36), because it is so outlandish. Ms. Dumas is represented by Respondent to be a linguistics expert. Ms. Dumas offers her opinion that, based upon her reading of the transcript of the November 2006 hearing, it "reflects consensual dialog, including debate and argument, between Mr. Moncier and Judge Greer" (*id.*, p. 4). She goes on to say she finds "nothing in the transcript that supports an opinion that Mr. Moncier intended or demonstrated disrespect to Judge Greer or that Judge Greer intended or demonstrated disrespect to Mr. Moncier" (*id.*). Both of these statements are ludicrous. If we are to believe these statements, then Respondent's actions in speech and demeanor to Judge Greer at the hearing were respectful, dignified, pleasant, consensual, and professional. She offers this incredible opinion after reading the Show Cause Order and the transcript (*id.*, p. 2). From her affidavit, the Court can see that she is a highly educated individual. However, Ms. Dumas's opinion is so devoid of belief and is such a departure from reality that to call it incredible is to be charitable. If we accept Ms. Dumas's opinion, a judge on the bench of this court, a highly respected and experienced judge, after engaging in an allegedly respectful, dignified, pleasant, consensual, and professional dialogue with a member of the bar of this court in a proceeding, for some unexplained reason, then suddenly had the attorney summarily arrested and taken into custody; personally charged the attorney with a federal criminal offense (based, apparently, on no offending conduct whatsoever); and referred the charges to the local United States Attorney's office. That office, upon receipt of and review of the charges, decided to prosecute the charges (even though they knew those charges were based on respectful conduct, since representatives of that office were present in the courtroom during the conduct, and despite the fact that the United States Attorney has no obligation whatsoever to prosecute contempt of court charges initiated by a judge). Then, at a public trial of

the matter, the same judge found the non-offending attorney guilty of the criminal charges by proof beyond a reasonable doubt; imposed a criminal sentence of probation and ordered the non-offending attorney to pay a fine; and issued a written opinion setting out facts characterizing the conduct as disrespectful and unprofessional, knowing that representation to be false. Such a scenario is woefully beyond belief.

The Court does not intend to mock Ms. Dumas, but must point out the utter absurdity of her opinion in light of the surrounding circumstances, of which the Court can only assume Ms. Dumas was unaware. Ms. Dumas, as a law school graduate[40] and resident of Knoxville, seemingly would have heard or read of an attorney in her local community being arrested, jailed, and later convicted of criminal contempt - for thankfully, such an event is extremely unusual. Yet her opinions indicate otherwise. Ms. Dumas does confess ignorance of Judge Greer's opinion. She also asserts the opinions of Judge Greer and Respondent, as first-hand witnesses to the conduct, prevail over hers (*id.*, p. 2). It is with this ignorance, her own recognition of the limitations on the relevance of her own opinions, and an apparent lack of knowledge as to the courtroom conduct of a judge and professional attorneys, that Ms. Dumas must have arrived at her incredible conclusions.[41]

---

[40]Ms. Dumas's resume does not indicate she has ever practiced as an attorney or is or has been admitted to a bar (*see* Court File No. 36, Attachment 1).

[41]Nevertheless, Ms. Dumas did find someone worthy of blame in the hearing – Judge Greer. "Judge Greer was the controlling party in the communication. At any point, Judge Greer had authority to terminate the communication and rule. Judge Greer did not terminate the communication." (Court File No. 36, pp. 4-5). This parrots Respondent's casting of blame on Judge Greer. In his Response, Respondent stated: "Respondent avers and evidence will be presented at a hearing that Judge Greer, after Respondent asked if he could speak to his client, could have either ordered Respondent, (sic) out of the courtroom or ordered counsel placed in jail, and then completed his questioning of Vassar and thereafter conducted the sentencing hearing so that there was no actual obstruction of justice[.]" (Court File No. 13, p. 16, Response I, ¶ 65.) In Respondent's testimony he stated: "Judge Greer could have said, 'No, you may not speak to your client,' or Judge Greer

53

However, the Court cannot be as charitable to Respondent. Respondent was in the Courtroom and knew what Judge Greer's reaction was. Respondent knew Judge Greer gave him a direct order. Respondent knew Judge Greer had him arrested. In his remarks at the hearing before Magistrate Judge Lee, Respondent admitted he knew Judge Greer was offended by Respondent's behavior. "However, it was obvious to me at that point in time that I had offended District Judge Greer." Tr. 31. Respondent knew Judge Greer found him guilty after a trial.

Counsel for Respondent and Respondent himself have a responsibility to not submit false or misleading evidence to the Court. If Respondent actually wanted the Court to accept Ms. Dumas's opinion, then the Court would be the victim of a fraud. Submission of this affidavit shows a contempt for the truth and an utter disregard for honesty. If Respondent did not want the Court to accept Ms. Dumas's opinion as truth, but rather submitted it for some other reason, then Counsel for Respondent and Respondent submitted a frivolous document to the Court without any factual or legal basis to support it. The Court had to expend its scarce time and resources to read this declaration. A submission such as this, which is not only devoid of a factual basis, but relies upon an utterly false and incredible basis, should never be submitted in a court of law. This Court expects and, for the sake of the proper operation of justice, must demand much better from attorneys practicing before it.

The Court feels compelled to address one final issue relating to Ms. Dumas's affidavit. Ms. Dumas writes "... the question of whether Judge Collier would or could have handled the

---

could have said, 'Yes, you can speak to your client,' and it would have ended." Tr. 161. It is left to the imagination as to why Respondent believes Judge Greer was required to permit and accommodate Respondent's unprofessional and unethical behavior.

communication differently is immaterial" (*id.*, p. 5, ¶ 16).[42] If it were in her expertise and relevant to the issue before the Court, it would be appropriate for Ms. Dumas to postulate that judges might differ as to their reaction to Respondent's pattern of repeated interruptions. However, there is no reason to interject this Court personally into Ms. Dumas's hypothetical; Ms. Dumas's statement implies this Court, sitting as an impartial entity, is somehow a litigating party in this matter. The Court again assumes this is a result of Ms. Dumas's ignorance of the legal system, but remains troubled Counsel for Respondent did not review this before it was submitted, counsel Ms. Dumas on the impropriety of this language, and have it deleted.

Ultimately, submitting Ms. Dumas's declaration is yet another demonstration of the contempt and disrespect Respondent has for the institutional role of the judge.

## VI.    FACTUAL ACCURACY OF SHOW CAUSE ORDER ESTABLISHED

The Court agrees with and accepts Magistrate Judge Lee's findings that the factual allegations in the Show Cause Order are accurate and are largely undisputed (Court File No. 65). The Court has considered Respondent's Exceptions to the Recommendation and makes the following specific findings. These findings are consistent with, but independent of, Magistrate Judge Lee's findings. The Court will limit its discussion to just the allegations that Respondent interrupted and talked over Judge Greer, threatened to abandon his client, and disobeyed a direct order of Judge Greer. While the Court finds Respondent did accuse opposing counsel of

---

[42]This statement is fundamentally flawed in its accuracy because, as previously discussed, the Show Cause Order is not a statement of opinion, but rather a statement of events based upon the evidence already possessed by the Court, which then allows an attorney to respond to the accuracy or inaccuracy of that statement and the supporting evidence.

involvement in a conspiracy against him, and this conduct is unethical and unprofessional conduct, the Court will not discuss this allegation further to any significant extent.[43]

The Court will also consider the factual findings, both explicit and implicit, made by Judge Greer in connection with the November 2006 hearing. Those findings have preclusive effect and, even if they did not, the Court would accord substantial deference to his findings. *In re Peters*, --- F. Supp. 2d ----, 2008 WL 1000131 at *3 ("Such findings are commonly given preclusive effect in subsequent disciplinary proceedings."), *4 ("Moreover, even if collateral estoppel were inapplicable here, this [Disciplinary] Committee routinely accords substantial deference to the factual findings of the court that heard the evidence, for much the same reasons that an appellate court gives such deference, i.e., that the court that hears the evidence is in the best position to assess credibility.").

## A.    Respondent committed alleged violations

### 1.    Allegation Respondent interrupted the court

---

[43]Respondent admitted he accused opposing counsel of being involved in a conspiracy against him, although at the hearing before Magistrate Judge Lee, he disputes using the word conspiracy. He does admit he accused the prosecution of improper behavior and making a concerted effort to damage him. Tr. 183 - 88. In contrast to his testimony at the hearing, in his response to the Show Cause Order regarding the same alleged statement, Respondent says, "Respondent avers and will offer evidence at a hearing that Respondent had a reasonable basis to make the statements cited in the Show Cause Order pertaining to AUSA Smith and the prosecution team in Greeneville Division (sic) of this Court." (Court File No. 13, p. 18, Response IV, ¶ 5). "Respondent avers and will offer evidence at a hearing that to date Respondent has not been allowed access to information and documents necessary to litigate the bias that has developed against Respondent in the Greeneville Division of this Court (sic)." (*id.*, p. 19, Response IV, ¶ 7). This is also unethical and unprofessional behavior. "A charge of impropriety by one lawyer against another in the course of litigation should never be made except when relevant to the issues of the case ...." American College of Trial Lawyers, Code of Trial Conduct, ¶ 13(e). However, in light of the Court's disposition of the other three findings of misconduct, the Court will officially reprimand Respondent for his unethical and unprofessional behavior in this regard. It is expected of members of the bar of this court that they will conduct themselves in a professional and civil manner and not violate the ethical standards of this district by engaging in such conduct.

In his response, Respondent admits "the transcript reflect [sic] uncompleted sentences by both the District Judge and Respondent" (Court File No. 13, p. 17, Response III, ¶ 4). In his testimony before Magistrate Judge Lee, Respondent admitted he did interrupt Judge Greer. Tr. 168-74. Respondent asserts he did not intend to be disrespectful with his interruptions. "I did not believe that there was any disrespectful or intentional interruptions by me of Judge Greer when he was speaking, nor, other than him having control of the proceedings, did I take the 20 times that double dashes are used when I was speaking to be disrespectful to me." Tr. 168.

Judge Greer also made a finding that Respondent interrupted and talked over him. In his opinion Judge Greer said:

> It is unlikely that this Court, and most other courts, would have taken the extraordinary step of citing Moncier for contempt if the incident of November 17 had been an isolated one. It was not, however. The transcript of the November 17 hearing establishes that Moncier had interrupted the Court no fewer than 14 times during the November 17 proceedings before the Court's order to Moncier to say not one more word.

*Moncier II*, 2007 WL 1577718 at *3 (footnote omitted).

Magistrate Judge Lee found he had interrupted Judge Greer: "The allegation Respondent repeatedly interrupted the court is established in the transcript" (Court File No. 65, p. 42).

Respondent in his Exceptions does not challenge this finding (*see* Court File No. 68).

This is an opportunity for this Court to clearly state on behalf of all the judicial officers of this court that, absent an emergency such as a fire or safety issue, it is never proper or acceptable conduct for an attorney to interrupt a presiding judge in a proceeding while that judge is speaking. In this district, such conduct is considered unprofessional behavior. And if repeated instances of such professional misconduct take place in a proceeding as is the case here, then such conduct is sanctionable. *See United States v. Wittig*, 2005 WL 758606, *6-7 (D. Kan. Apr. 4, 2005). A judge

57

may not take offense at the interruption, may excuse it, and may even invite an interruption, but for an attorney to interrupt a judge, even in such circumstances, is unprofessional.[44]

Based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, and Judge Greer's findings, the Court finds by clear and convincing proof [45] that Respondent engaged in unethical conduct that tended to bring the court and the bar of this court into disrepute.

Further, based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, and Judge Greer's findings, the Court finds by clear and convincing proof that Respondent engaged in professional misconduct that violates the Rules of Professional Conduct of Tennessee. Tennessee Rules of Professional Conduct, Rule 3.5(e) provides: "A lawyer shall not: (e) [e]ngage in conduct intended to disrupt a proceeding before or conducted pursuant to the authority of a tribunal." Respondent interrupting and talking over Judge Greer clearly disrupted the proceeding. Judge Greer found Respondent's conduct intentional. *Moncier II*, 2007 WL 1577718 at *7. This Court makes the same finding here. Accordingly, this Court finds Respondent violated Rule 3.5(e).

---

[44]Respondent also stated during his disciplinary hearing that he did not believe it disrespectful when Judge Greer interrupted him. Tr. 168. It should be clarified that, although the judges of this district do their utmost to show respect to the attorneys practicing before them and to treat them as professionals, it is not an issue whether a judge interrupts an attorney. A judge is charged with maintaining order in the courtroom and is responsible for the progression of the proceedings. A judge may interrupt any party at any time. If a party takes issue with such interruptions, it does so on appeal. It is never appropriate for a party to challenge the judge for control of the courtroom.

[45]The Local Rule requires proof of an attorney's violation by clear and convincing evidence. Magistrate Judge Lee found the violations proven by that standard. However, here, the proof is so substantial that it exceeds that standard and would have satisfied an even higher standard of proof.

58

## 2.   Allegation Respondent threatened to abandon or abandoned client

Respondent in his response admits he threatened to abandon or abandoned a client in the midst of a court proceeding (Court File No. 13, p. 20, Response V, ¶ 2).

In the hearing before Judge Greer, Respondent, after saying he would just sit and remain mute, stated: "I can't provide him a defense."  Vasser Tr. pp. 41-42.

In his testimony at the hearing before Magistrate Judge Lee, Respondent admitted he did threaten to abandon his client.  Tr.  198.  "At one time at the bench, I said, 'Judge, I might just have to sit here and remain moot."[46]  *Id.*  While admitting he made the statement, Respondent asserts he never had any intent to actually abandon his client.  This does not lessen the unprofessional nature of the comment.  It is unethical for an attorney to falsely state he will abandon a client so as to bully or intimidate a judge.  This allegation is established.  As Magistrate Judge Lee said: "The allegation Respondent threatened to 'sit there and remain moot,' i.e., not provide a defense for his client, due to a potential conflict Respondent perceived is again proven in the transcript"  (Court File No. 65, p. 43).

Respondent in his Exceptions does not challenge this finding.

Judge Greer in his opinion also stated Respondent threatened to abandon his client.  Respondent's conduct was of such significance Judge Greer thought it merited mention.  Judge Greer in footnote 13 of his opinion said:

> So strong was Moncier's determination not to go forward with the sentencing hearing on November 17 that he, at one point, "threatened" to stand mute during the sentencing hearing of his client.

2007 WL 1577718 at *5 n.7.

---

[46]Presumably, the word that was used was "mute" and not "moot."

One of the most basic responsibilities of a member of the bar of this court is to represent clients. Threatening to stand mute during a hearing amounts to abandoning of a client - a total shirking of the attorney's professional obligation. *See United States v. Phifer*, 511 F.2d 960, 962 (4th Cir. 1975) ("[Z]ealous advocacy does not require, nor does the Code of Professional Responsibility permit an attorney to abandon his client and refuse to continue when the court has ruled adversely to his motion. [The attorney] should not have withdrawn from the case and left the courtroom. Nor should he have been permitted so to do. His conduct was quite inexcusable and thoroughly unprofessional."). Respondent's action in this instance was an effort to bully and intimidate the presiding judge into letting Respondent have his way. This is highly unethical conduct and has no place in the legal profession. That Respondent did not carry out his threat does not lessen the violation in the slightest. The presiding judge did not know Respondent would not carry out his unethical threat. *See In re Peters*, --- F.Supp.2d ----, 2008 WL 1000131 at *6 ("[T]he statements were made in a context in which there was a high likelihood that they would be taken seriously by a young associate, and this, at a minimum, evidences a reckless disregard of the prohibitions of the New York Disciplinary Code."). A judge in the midst of a proceeding faced with a threat by an attorney to abandon a client is put in the predicament of not being able to go ahead with the proceeding, confronting the attorney, or giving in to the attorney's demands. The goal of the presiding judicial officer is to have the proceeding proceed in an orderly fashion to its natural conclusion. Threats such as this interfere with that goal.

Based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, Judge Greer's findings, and Magistrate Judge Lee's findings, the Court finds by clear and convincing proof that Respondent engaged in unethical conduct that tended to bring the

court and the bar of this court into disrepute.

Furthermore, based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, Judge Greer's findings, and Magistrate Judge Lee's findings, the Court finds by clear and convincing proof that Respondent engaged in professional misconduct that violates the Rules of Professional Conduct of Tennessee. Tennessee Rules of Professional Conduct, Rule 1.1, in part, provides: "A lawyer shall provide competent representation to a client." Threatening to abandon a client is not competent representation. Respondent violated Rule 1.1. It also amounts to conduct intended to disrupt the proceeding in violation of Rule 3.5(e) and conduct that is prejudicial to the administration of justice in violation of Rule 8.4(d).

### 3. Allegation Respondent disobeyed the court

In his response, Respondent admits he disobeyed the order of the court (Court File No. 13, p. 24, Response IX, ¶¶ 2-3).

In his testimony before Magistrate Judge Lee, Respondent admitted he did disobey Judge Greer's order not to say another word. Tr. 132-38. Respondent admits he heard and understood Judge Greer's order but did not understand it to prohibit him from speaking to his client or speaking to Judge Greer, even though Judge Greer said "one more word and you're going to jail." Respondent also asserts that, by disobeying the order, he did not intend any disrespect. Tr. 144-47.

Magistrate Judge Lee found this factual allegation to be accurate: "The transcript reflects that despite being ordered first to be quiet and then to not say another word and after being warned of the consequences of such action, Respondent interrupted again in direct violation of the court's order." (Court File No. 65, p. 44).

Respondent in his Exceptions does not challenge this finding.

61

Judge Greer discussed the disobedience in his opinion in this manner:

> On November 17, 2006, Moncier received a direct, unequivocal command for silence
> and that he not further interrupt the Court's inquiry. The issue in this case is not
> whether the order was a proper or correct order. Other judges might well disagree
> with or find improper the order issued by the Court. Regardless, however, Moncier
> had the duty to obey the Court's order. See *Maness* 419 U.S. at 459 (stating that an
> order by a court with jurisdiction, particularly during trial, "must be complied with
> promptly and completely" until reversed). He has not seriously contested the
> lawfulness of the order or his disobedience of it. This element of the offense is
> established, beyond a reasonable doubt, from the proof in this case.

*Moncier II*, 2007 WL 1577718 at *9.

> Moncier's insistence that his duty to his client required his defiance of the Court is
> misplaced. If this Court acted arbitrarily in commanding silence from Moncier and
> failed to grant him reasonable opportunity to argue his position to the detriment of
> his client, then the court of appeals would have reversed. And even if Moncier
> subjectively believed that his actions were necessary to preserve issues for appellate
> review (which he has not claimed), such belief does not excuse direct violation of a
> direct order of the trial judge. 552 F.2d at 507; *Hallinan v. United States*, 182 F.2d
> 880 (9th Cir.1950), cert. denied 341 U.S. 952 (1951).

*Id.* at *8.

> Although Moncier argues that he lacked the intent to obstruct justice (discussed
> below), he has not seriously disputed that his actions on November 17, 2006, had a
> disruptive effect on the proceedings and resulted in a delay of those proceedings.
> One point raised by Moncier, however, does bear some discussion here. Moncier has
> asserted through his testimony at trial and in an affidavit filed in support of his
> pre-trial motion to dismiss that the Court had no right to question his client (i.e. that
> Rule 44 did not permit the Court's questions), that he had no idea why the Court was
> asking the questions (except possibly to "clean up the record") and that his client had
> communicated to him through eye contact and body language that he wished to talk
> to him before answering the Court's questions. Such assertions by Moncier lack any
> credibility.

*Id.* at *5.

Respondent in his testimony admitted he did disobey the order of Judge Greer but he stated

he did not do so intentionally, he was obligated to disobey the order, and doing so was harmless.

Tr. 142-150. This explanation is baseless. No judge on this bench should be subjected to such

62

conduct by a member of the bar.

Based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, Judge Greer's findings, and Magistrate Judge Lee's findings, the Court finds by clear and convincing proof that Respondent engaged in unethical conduct that tended to bring the court and the bar of this court into disrepute.

Further, based upon Respondent's admission of the factual accuracy of this allegation, the transcript of the proceeding, Judge Greer's findings, and Magistrate Judge Lee's findings, the Court finds by clear and convincing proof that Respondent engaged in professional misconduct that violates the Rules of Professional Conduct of Tennessee.

Tennessee Rules of Professional Conduct, Rule 8.4, in part, provides: "It is professional misconduct for a lawyer to: (b) [c]ommit a criminal act that reflects adversely on the lawyer's .. fitness as a lawyer ...;(d) [e]ngage in conduct that is prejudicial to the administration of justice; or (g) [k]nowingly fail to comply with a final court order ..." The Court finds Respondent violated Rule 8.4. Respondent's conduct before Judge Greer was a criminal offense.[47] It took place in court during a court proceeding and reflected adversely on Respondent's fitness as a lawyer. Respondent's conduct was prejudicial to the administration of justice and is a knowing failure to obey the order of Judge Greer. Moreover, Respondent's conduct was intended to disrupt the proceeding in violation of Rule 3.5(e).

Judge Greer found: "The record in this case clearly establishes beyond a reasonable doubt that Moncier disobeyed the clear, unequivocal and lawful order of this Court and that he did so with

---

[47]However, even if Respondent's misconduct did not satisfy the legal requirements for a criminal offense, his misconduct still is in violation of the professional and ethical standards for the federal courts of the Eastern District of Tennessee and would still warrant the same outcome.

63

the intent to obstruct the administration of justice and to interfere with the orderly conduct of this Court's proceedings on November 17, 2006." *Moncier II*, 2007 WL 1577718 at *10. The Court agrees with this finding and also concludes Respondent acted knowingly, deliberately, and intentionally.

## B. Assessment of Respondent's Misconduct

Having accepted and approved Magistrate Judge Lee's findings that Respondent engaged in unethical behavior and violated the Tennessee Rules of Professional Conduct, and having made a separate determination that Respondent engaged in unethical behavior and violated the Tennessee Rule of Professional Conduct, the Court will turn now to a consideration of what, if any, disciplinary action is appropriate.

If the evidence before the Court involved only interrupting the court or talking over the court and this conduct was isolated, although unprofessional conduct, the Court would consider only a private reprimand or admonition. If the evidence before the Court involved only interrupting the court or talking over the court but was repeated, although unprofessional conduct, the Court would consider a public reprimand or admonition. Respondent's misconduct is much more serious, however. From his own testimony before Magistrate Judge Lee and from Judge Greer's opinion, Respondent has engaged in previous misconduct and has disregarded earlier warnings[48] and efforts

---

[48]Respondent testified he had been reprimanded by Judge Jordan in 2005 (Court File No. 65, p. 32). "Judge Jordan put down an order saying that if he heard about me being disrespectful in - - I don't know whether it was in pleadings or not, to another judge in this district, he would, sua sponte, hold me in contempt of court." Tr. 225 - 28. Judge Jordan would not make such a statement in jest nor without a solid reason. In hindsight, it might have been better for Respondent, this court, and the bar had the Court taken action against Respondent pursuant to Local Rule 83.7 at that time. An official admonition or reprimand, or the possibility of some official sanction, might have demonstrated to him the need for him to raise his conduct to professional standards and might have forestalled his conduct in November 2006. By not acting on the matter then, it was falsely

64

to encourage him to raise his conduct to the standards required in this district. Threatening to abandon a client is very serious misconduct and disobeying a direct order of a judge is a very serious ethical violation. Respondent's continued disrespect to the institutional role of judge is also very serious. As the Supreme Court said long ago in *Bradley:*

> But on the other hand the obligation which attorneys impliedly assume, if they do not by express declaration take upon themselves, when they are admitted to the bar, is not merely to be obedient to the Constitution and laws, but to maintain at all times the respect due to courts of justice and judicial officers. This obligation is not discharged by merely observing the rules of courteous demeanor in open court, but it includes abstaining out of court from all insulting language and offensive conduct toward the judges personally for their judicial acts.

80 U.S. at 355.

Respondent argues he was not disrespectful to Judge Greer because, if he had been, Judge Greer could not have heard his contempt prosecution due to personal bias. This is not true. Respondent was disrespectful to the presiding judge at the hearing in question; it was not directed at Judge Greer because of who he is, but rather because of the office he holds. Respondent was disrespectful and contemptuous of the institutional role of the judge. Respondent would have displayed the same unprofessional behavior to any judicial officer of the district that happened to

---

interpreted by Respondent that his disrespect to the court and misconduct was tolerable.
    In this same testimony, Respondent says he sent letters to all the other judges of this court, notifying them of Judge Jordan's reprimand. He did this on his own initiative. Apparently, at that time, he saw nothing improper in communicating in writing to the other judges of this court about a disciplinary matter. Tr. 124, 226 (Respondent testified: "[I sent to] all the judges in the Eastern District of Tennessee a response and a request for a hearing on Judge Jordan's disciplinary order of me pursuant to the very rule that we're here under today."). Yet, when ordered by this Court to notify just those judge before whom he had cases, he claims that such an order is improper. His earlier action, notifying judges of Judge Jordan's reprimand, indicates his recent explanation is not honest.

be presiding over the case.[49]  Judge Greer disposed of this contention of personal bias with the following language:

> As the Court order of March 23, 2007, (Doc. 748), makes clear, Mr. Moncier's alleged contemptuous conduct involved the direct disobedience by him of an explicit oral order of the Court.  Except to the extent that any refusal to comply with a court order generally involves disrespect to the Court as an institution, Mr. Moncier's conduct in the case involved no personal attack upon the undersigned and was in no sense personal to the undersigned, with one possible exception which will be discussed below.  Resistance to the authority of the Court by refusal to comply with its orders is hardly the kind of offense which involves disrespect toward or criticism of a judge such as to invoke the requirements of Rule 42(a)(3).  In addition, the Court's comments of March 23, 2007, supported by the record as a whole, suggest Mr. Moncier's disrespect for the Court as an institution rather than an improper attack of a personal nature toward the undersigned, who simply happens to have the responsibility of presiding over this Court.

*Moncier I*, 2007 WL 1206731 at *2.

### C.     Other matters

#### 1.     Respondent's argument that zealous representation excuses unprofessional conduct

The Court must also address a suggestion by Respondent and some of the attorneys who submitted declarations that somehow zealousness is a justification or excuse for professional misconduct.  About two years ago, the country endured a very tragic spectacle arising in North Carolina where an attorney serving as district attorney allowed his zealousness to overcome the obligations he owed to the profession and the law.  Great harm was done to individuals, the reputation of one of the country's leading institutions of higher learning, and the legal profession as a whole.  The sad example of that attorney should serve as a caution that zealousness on the part

---

[49]Indeed, Respondent testified to precisely this, stating he would have disobeyed the court order regardless of the identity of the judge.  Tr. 127 (". . . I would have done it before any district court judge.")

of attorneys can never supercede their obligation to the profession and the law.

In fact, Respondent's notion of zealousness is a perversion of professionalism. The idea that zealousness can be an excuse for unethical and unprofessional behavior is a pernicious disease that threatens to eat away at the integrity and nobility of the court as an institution. Zealousness is commendable, but it is not and cannot ever be an acceptable excuse for unprofessional and unethical conduct. Under Respondent's construct, attorneys are free to interrupt and talk over judges presiding over proceedings, to abandon or threaten to abandon a client if the attorney does not get his way, and to disobey a direct order of a judge when the attorney deems it appropriate. That is not how attorneys are expected nor permitted to conduct themselves in the Eastern District of Tennessee.

Moreover, the idea that there is a conflict between zealous advocacy and ethical and professional behavior is completely false. There is no conflict between zealous advocacy and professional conduct. The case law is replete with affirmations of that fundamental principle. The Court will merely cite to two. *Black and Decker Inc. v. Robert Bosch Tool Corp.*, 2006 WL 3359349 (N.D. Ill. Nov. 20, 2006), *vacated on other grounds*, 2008 WL 60501 (Fed. Cir. Jan. 7, 2008), and *Conklin v. Warrington Tp.*, 2006 WL 2246415 (M.D. Pa. Aug. 4, 2006). In *Black and Decker*, the court said:

> An attorney's obligations to provide zealous advocacy on behalf of his client are not absolute and uncompromising, but must be viewed in light of his additional obligations as an officer of the court to promote the administration of justice and to comply with the court's rules, notices, and orders. Additionally, as with his obligations to his client, the attorney's obligations to the court are ongoing at every stage of the litigation and the attorney must continually reevaluate the positions advanced in light of both the development of the litigation itself and of the relevant case law affecting the litigation.

2006 WL 3359349 at *2 (quoting *Allen Eng'g Corp. v. Bartell Indus.*, 299 F.3d. 1336, 1356 (Fed. Cir. 2002)).

In *Conklin,* the court made the same point:

> When an attorney is of the opinion that the court has issued an erroneous ruling, it is his or her duty as an advocate to seek reconsideration or clarification of that ruling. However, the exercise of this duty of advocacy never justifies the use of disrespectful, unprofessional or indecorous language to the court. Respect and zealous advocacy are not mutually exclusive concepts. When zealous advocacy degenerates into impertinent, scandalous, and insulting language, it is the court's duty to address squarely the offending conduct, and to tailor a sanction appropriate to the offense. *See, e.g., Commonwealth v. Rubright*, 414 A.2d 106, 110 (Pa.1980) ("The judge is the court, and a display of insolence and disrespect to him is an insult to the majesty of the law itself.... When carrying out the judicial function, the judge becomes a personification of justice itself. When presiding over any aspect of the judicial process, the judge is not merely another person in the courtroom, subject to affront and insult by lawyers."

2006 WL 2246415 at *2 (footnote omitted).

## 2. Comparison with other disciplinary cases

Since this Court has been Chief Judge it has taken action under Local Rule 83.7 on numerous occasions. However, in the great majority of those cases the Court was acting pursuant to Rule 83.7(f) because the Supreme Court of Tennessee or some other authority had taken action against a member of this bar, for reasons such as not paying required fees or obtaining necessary Continuing Legal Education credits, and this Court was merely taking reciprocal action.

Only in three cases did the Court contemplate issuing a Show Cause Order and in only one other case did the Court do so. In that case, the attorney had disobeyed an order of a judge of this court. The attorney had been ordered not to practice in a particular court but had continued to do so in a surreptitious manner. He had done so on multiple occasions by accepting clients, collecting fees from those clients, preparing filings, and then having another lawyer submit those filings to the court. When the attorney's disobedience became known, the matter was reported to this Court and a Show Cause Order was issued. Respondent demanded a hearing but failed to appear for the

68

hearing. The Court suspended the attorney from the bar of this court for five years, but permitted him to petition the court for early readmission after two years based upon him satisfying certain conditions.

This earlier case is not similar to Respondent's case in all respects - that misconduct did not take place in front of the court, did not involve interruptions of the court, did not involve abandonment of a client, and did not involve any disrespect or contempt for the institutional role of the judge. In that light, this previous case is not as aggravated as Respondent's case. However, even though dissimilar, it does provide some gauge for Respondent's disposition.

## VII. DISPOSITION OF UNPROFESSIONAL CONDUCT

### A. Mitigating factors

1. It is a positive comment on Respondent that over twenty of his colleagues and co-workers vouch for his character. They greatly admire his legal work and advocacy for clients and the mentoring, training, and support he provides to fellow criminal defense attorneys.

2. Respondent's misconduct cited in the Show Cause Order took place in just one proceeding.

3. Respondent has expressed remorse regarding how his conduct was perceived and states he has attempted to learn to communicate better.

4. Respondent has appeared in several court proceedings without incident since the November 2006 misconduct.

### B. Aggravating factors

The Court will now consider those matters that are aggravating and that distinguish

Respondent's case from previous disciplinary actions.

1.      Respondent was reprimanded by Judge Jordan in 2005, according to Respondent's testimony before Magistrate Judge Lee, for disrespect to judges of this court.  According to Respondent, Judge Jordan warned him to not engage in such conduct again and, if Judge Jordan heard that he had, Judge Jordan would hold him in contempt.  It is rare for a judge to issue such a reprimand to a lawyer and for an attorney to receive one.  Most attorneys would have made sure they rectified the deficiencies that concerned the judge.  This should have alerted Respondent that his conduct was viewed as unethical and unprofessional conduct.  This was a clear warning to Respondent.  Responded failed to heed this warning.

2.      Respondent had been warned repeatedly by Judge Greer prior to November 2006 that his actions were unethical, unprofessional, and unacceptable.  Judge Greer had also threatened to hold Respondent in contempt.  As Judge Greer described it:

> Taking the monumental step of accusing an attorney of criminal contempt is an act of last resort and, in this Court's view, should be used only after all other efforts have been exhausted to assure the offending lawyer's compliance with the applicable rules of professionalism and civility.  Those efforts had already been exhausted with Moncier.  Throughout the course of Moncier's appearances before this Court, this Court has admonished Moncier for a wide range of misconduct, has lectured him concerning the Court's expectations as to professionalism and civility and has threatened him with a finding of contempt on prior occasions, all to no avail. This case, ultimately speaking, presents a very simple issue of whether the presiding judicial official will control the course of the proceedings in the courtroom or whether contumacious lawyers will be permitted to take control.

*Moncier II,* 2007 WL 1577718 at *4.

Yet in the face of these warnings, admonishments, lectures, and threats, Respondent continued in and escalated his unprofessional behavior in the November 2006 hearing.  Most attorneys would be mortified at such admonitions from a judge and would strive to raise their

practice and behavior to a higher level of professionalism so that their conduct would be beyond criticism. Respondent failed to heed the warnings Judge Greer gave.

3. Respondent has not demonstrated any remorse for his misconduct and unprofessional behavior and fails to recognize his conduct was improper. This compels the Court to conclude Respondent will repeat the offensive behavior before judges of this court in the future.

4. Respondent has failed to come to grips with his obligation as a lawyer admitted to the bar of this court to obey orders of this court, whether he agrees with them or not and whether he intends disrespect or not. Attorneys simply are not permitted to decide on their own when and whether to obey an order of a judge of this court. If, as the Respondent seems to suggest, the judges allowed any attorney before them who disagreed with a court order to disobey it, society would lose the rule of law in resolving disputes. Our legal system would be relegated to little more than the law of the jungle, conceding victory to the party with the attorney who could bellow the loudest and intimidate the most. This Court appreciates Respondent's desire to provide zealous advocacy to his clients, but Respondent does not seem to appreciate he is not special in this regard. This Court is constantly presented with defense attorneys who zealously represent their clients - but they also do so in an ethical, professional manner and with civility and respect to the Court and to opposing counsel.

5. Respondent disobeyed this Court in failing to file a response as ordered.

6. Respondent disobeyed this Court in failing to notify other judicial officers as ordered.

7. Respondent filed frivolous motions contesting the authority of the Court to discipline him.

8. Respondent filed a frivolous motion seeking to have the Court reverse its order

requiring him to inform other judicial officers.

9.      Respondent asserted being "goaded" by opposing counsel is an excuse or justification for his unethical and unprofessional conduct. Respondent claimed he was entrapped by the opposing Assistant U.S. Attorney into the misconduct, but ultimately then refused to acknowledge it was misconduct.

10.     Respondent filed a number of motions and other submissions that demonstrated arrogance, a dismissive attitude toward the Court, and an indifference to the unnecessary burden those submissions placed on the Court.

11.     Respondent filed a number of frivolous motions and other submissions that were devoid of legal or factual support and that were submitted for improper reasons.

12.     Respondent failed to acknowledge that it is unethical and unprofessional conduct for an attorney to interrupt and talk over a judge.

13.     Respondent failed to acknowledge that it is unethical and unprofessional conduct for an attorney to threaten to abandon a client.

14.     Respondent failed to acknowledge that it is unethical and unprofessional conduct for an attorney to disobey a direct order from a judge.

15.     Respondent dismisses efforts at constructive criticism designed to have him raise his conduct to a level meeting the minimum standards of ethical and professional conduct as expressions of "dislike" about the way he practices law. Before Judge Greer, Respondent made this claim. Judge Greer corrected him in the following language:

> What I have said to you on numerous occasions is that I do not like the lack of civility that you bring to cases; that I do not like the lack of candor that you often bring to cases; that I do not like the fact that you on occasion misrepresent facts before a jury or before a witness; that I don't like the aspersions you cast, the

72

personal aspersions that you cast at times upon the professionals who oppose you, nor do I like the aspersions you cast upon the Court at times...I do not like the fact that you'll make an argument before the jury that I sustained an objection to or, or instructed you not to make....

Vassar Tr. 90.

16.     Respondent submitted a number of declarations or character references by lawyers wherein those lawyers indicate Respondent engaged in ethical and appropriate professional behavior in the proceeding before Judge Greer.   In some of the declarations, the attorneys even state Respondent's behavior is commendable.   These statements from supporters, if they are to be believed, indicate that the signers believe that it is appropriate and professional conduct for an attorney who is a member of the bar of this court to interrupt and talk over a judge, make scurrilous personal attacks on opposing counsel, threaten to abandon a client in the midst of a court proceeding, and disobey an order of the court.   By submitting them, one can only assume that is also Respondent's belief.   That is a disturbing sentiment.

17.     Respondent submitted a declaration from Bethany Dumas that flies in the face of and directly contradicts the undisputed facts in this case.   Respondent cannot have seriously expected the Court to give this submission any credence.   If Respondent desired the Court to accept this submission as true, then this could only be an effort to perpetrate a fraud on the Court.

18.     Finally, in this Court's thirteen years on the federal bench, it knows of no situation where a lawyer in this district has exhibited such unethical and unprofessional conduct as Respondent did in the November 2006 hearing.

### C.     Guiding considerations

The Court  in deciding the appropriate disciplinary action in this case will be guided by the need to protect the public; the need to protect the integrity and standards of the court and the bar of

73

the Eastern District of Tennessee; the need to correct the unethical and unprofessional behavior of Respondent; and the need to deter other members of the bar of this court from similar unethical and unprofessional conduct. The Court will also consider how the disciplinary action compares to the Court's previous disciplinary case.

In weighing the aggravating and mitigating factors, the Court concludes that disbarment is not appropriate for Respondent's misconduct. However, the Court does conclude that discipline is necessary, and that such discipline be designed to impress upon Respondent the absolute requirement he live up to the standards and expectations of the bar of this court; to provide him an opportunity to demonstrate understanding of his unethical and unprofessional conduct; to provide him an opportunity to make amends for this misbehavior; and to allow him to return to this bar under supervision to protect the public and the integrity of the bar of this court. Considering all of the factors, the Court concludes that a suspension of five years with two years probation, and with the possibility of early reinstatement with probation, is necessary and appropriate to fulfill the purposes detailed above.

## VIII. CONCLUSION

This Court, along with the other judges of this bench, has often said the bar of the Eastern District of Tennessee is outstanding, civil, professional, and competent. That opinion means the judges think that the overwhelming majority of attorneys admitted to this bar habitually conduct themselves with dignity, civility, and professionalism, and always strive to adhere to the highest of ethical standards. Rarely are we disappointed.

Respondent's deviation from these standards makes manifest the necessity to take clear

74

action to demonstrate his conduct is fundamentally unacceptable for members of this bar. If even a small percentage of the attorneys that practice in the Eastern District of Tennessee engaged in interrupting and talking over the presiding judge, attempting to bully and intimidate the presiding judge by threatening to abandon clients in the midst of a court proceeding, making scurrilous personal attacks on opposing counsel, and disobeying direct orders of the court, then the civility and order in the courts would quickly dissolve. The public would be left with a federal court system dominated by force and intimidation tactics, rather than the rule of law.

Respondent's misconduct is unprecedented in this district. Facing disciplinary action from this Court, Respondent bombards the Court with frivolous motions and filings in this case, disobeys the orders of this Court, submits recklessly false declarations, and places an unnecessary burden on the Court's time and resources. Respondent still shows no appreciation that his misconduct cannot be tolerated in a court of law.

The need for disciplinary action here is amply demonstrated by Respondent's statement at the hearing before Magistrate Judge Lee. He said, "I must question why it is that I'm on trial here in Chattanooga when I have done everything that the law provides that I am permitted to do." This statement speaks volumes about Respondent's failure to understand and have insight into his own actions. Respondent's lack of appreciation for his unethical and unprofessional behavior and the danger of recurrence this presents clearly establishes the need for disciplinary action. *In re Peters*, --- F.Supp.2d ----, 2008 WL 1000131 at *3 ("Considering the nature and seriousness of the charges against [attorney], the strength of the record supporting those charges, and the danger of recurrence as demonstrated by respondent's lack of appreciation of the wrongfulness of her misconduct, the Committee concludes that an interim suspension of respondent from the practice of law before this

Court pending final adjudication of the charges against her is warranted."). Respondent apparently does not understand why the court is concerned with his behavior even after Judge Jordan in 2005 warned him about his disrespect to judges in this district and threatened to hold him in contempt; even after Judge Greer counseled and warned him prior to November 2006; even after Judge Greer had him arrested for his conduct in the November 17, 2006 hearing; even after his conviction for contempt of court before Judge Greer; and even after receipt of the Show Cause Order. Respondent has apparently dismissed all of these very strong warnings that he must meet the standards expected of attorneys that are members of the bar of this court. As Judge Greer stated regarding the necessity of action:

> While it would have been far easier and less time consuming for this Court to ignore Moncier's contemptuous conduct, to do so would be to encourage disobedience to lawful court orders. The ability of this Court-indeed, all courts-to compel obedience to its orders is fundamental to its proper function. For the Court to turn its head to Moncier's conduct would likewise further erode the respect of the public for the bar, the vast majority of whom take seriously "the processes of an orderly trial, which are the supreme object of the lawyer's calling." *Sacher v. United States*, 343 U.S. 1 (1952). The vast majority of lawyers vigorously represent their clients and understand that zealous representation of a criminal defendant does not include deliberate defiance of a judge's direct and explicit orders. Moncier's deliberate and continued interruption and argument with the rulings of the court and his unprofessional and contumacious conduct must cease; otherwise, the Court surrenders control and independence of the proceedings to lawyers who "equate contempt with courage." *Id*. This Court is unwilling to do so.

*Moncier II*, 2007 WL 1577718 at *10.

The Court detects in Respondent's behavior, both before Judge Greer and in this case, an undercurrent of disrespect and a subtle contempt for the institutional role and position of the trial judge in litigation. Judge Greer commented on this in his order and the Court has mentioned it above. Respect for the position of the presiding judge is necessary for the administration of justice. *See* American College of Trial Lawyers Code of Trial Conduct ¶ 17(b) ("During the trial, a lawyer

76

should always display a courteous, dignified and respectful attitude toward the presiding judge, not for the sake of the judge's person, but for the maintenance of respect for and confidence in the judicial office.") and ¶ 17(d) ("In performing these duties, a lawyer should conduct himself or herself according to law and the standards of professional conduct as defined in codes, rules and canons of the legal profession and in such a way as to avoid disorder or disruption in the courtroom.").

Consequently, having been provided with notice of the allegations and a chance to be heard; having submitted his response; having been afforded a hearing to respond to the factual allegations and present his own proof, the Court finds Respondent has engaged in unethical conduct and violated the Tennessee Rules of Professional Conduct. For this reason, the Court deems it in the public interest to suspend Respondent from the practice of law in this district. His conduct has fallen below that required of members of the bar of the Eastern District of Tennessee, and has called into question his fitness to continue as a member of the bar of the Eastern District of Tennessee. Permitting an attorney who refuses to accept the ethical and professional obligations of members of the bar of this court to continue as a member of this bar poses an immediate danger to the public, the bar, and this court. The Court therefore will accept and adopt Magistrate Judge Lee's Recommendation with respect to the necessity for disciplinary action.

Accordingly, the Court **ACCEPTS** and **ADOPTS** Magistrate Judge Lee's Recommendation and **ORDERS**:

(1) Respondent is **REPRIMANDED** for his remarks concerning opposing counsel;

(2) Respondent is **SUSPENDED** from the practice of law in the United States District Court for the Eastern District of Tennessee (all divisions and all units, including the Bankruptcy Court)

for a period of seven years with a maximum of five of those years being active suspension, and the

remaining years being on a probationary status, commencing on the date of the entry of this order;

(3) At the expiration of three years of the suspension, and at each one-year anniversary

thereafter, up until five years, Respondent shall be allowed to apply to the Chief Judge for an

**EARLY REINSTATEMENT**, which application must contain the following:

(a) Evidence by clear and convincing proof that Respondent has taken significant and meaningful steps to bring his practice and behavior in court up to the standards of ethics, civility, professionalism, and respect for the institutional role of the court that complies with the expectations and standards of members of the bar of the Eastern District of Tennessee;

(b) Copies of letters of apology addressed to all judicial officers of this district (district, bankruptcy, and magistrate) wherein Respondent admits his wrongful, unethical, and unprofessional conduct, makes an apology for the conduct, and makes a commitment he will not engage in such wrongful, unethical, and unprofessional conduct in the future. The sincerity of Respondent as expressed in these letters will have a bearing on whether the court determines Respondent has attained the fitness necessary for him to be reinstated;

(c) A certification that he has not been accused of any other unethical or unprofessional conduct of any type and by any attorney, client, body, board, judge, or entity since the date of this order; if the first application for reinstatement is denied, then in any later application this certification shall be limited to the preceding three year period;

(d) A certification that no official body or judge or court has taken action of any type against him for any unethical or unprofessional conduct of any type since the date of this order; if the first application for reinstatement is denied, then in any later application this certification shall be limited to the preceding three year period;

(e) A commitment to the Chief Judge that he understands, appreciates, and accepts the necessity of civility and professionalism in the practice of law by all attorneys admitted to practice in this district and that he has adopted these required principles into his practice and will conduct himself at all times with civility and professionalism; and

(f) Copies of letters addressed to all signers of the declarations submitted in reference to this disciplinary action informing them that his conduct before Judge Greer was wrongful, unethical, and unprofessional, and that it is never acceptable for a member of the bar of the Eastern District of Tennessee to interrupt or talk over a judge of this bench, to threaten to abandon a client in the course of a proceeding, to make scurrilous personal attacks on opposing

78

counsel, or to disobey an order of a judge even if the attorney believes the order is wrong. The sincerity of Respondent as expressed in these letters will having a bearing on whether the court determines Respondent has attained the fitness necessary for him to be reinstated.

(4) The Chief Judge will consider any petition for early reinstatement submitted after the expiration of three years by Respondent but will exercise its sound discretion in deciding whether or not to allow Respondent's application to be readmitted to the bar of this court to be considered prior to the expiration of five years;

(5) Should the Chief Judge decide to allow Respondent's application to be readmitted to the bar of this court to be considered prior to the expiration of five years, and the decision is made to readmit him, the Respondent shall be placed in a **PROBATIONARY STATUS** for the remaining years of his seven years of suspension. The terms and conditions of his probationary status shall be decided at such time as Respondent applies for readmission. If Respondent does not agree to these terms and conditions, Respondent's suspension shall continue until such agreement is reached but no longer than the remaining years of the seven-year suspension;

(6) At the expiration of five years, Respondent may apply for admission to the bar of this court and, if his application is accepted, he shall be placed in a probationary status for two years. The terms and conditions of his probationary status shall be decided at such time as Respondent applies for readmission. If Respondent does not agree to these terms and conditions, Respondent's suspension shall continue until such agreement is reached but no longer than two years;

(7) At the expiration of seven years, assuming Respondent has successfully completed his probationary period, Respondent may apply for admission to the bar of this court on the same basis as any other applicant.

**SO ORDERED.**

79

**ENTER:**

/s/ _____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

80

Case 1:08-mc-00009   Document 69   Filed 04/29/08   Page 80 of 80