UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | ) | |
|---|---|---|
| | ) | |
| | ) | |
| In re: | ) | Case No. 1:08-MC-9 |
| HERBERT S. MONCIER, ESQ. | ) | |
| BPR No. 1910 | ) | Chief Judge Curtis L. Collier |
| | ) | |
| | ) | |

## MEMORANDUM

Herbert S. Moncier, Respondent, is a member of the bar of this court and is licensed by the state of Tennessee. Because of professional misconduct that violated the Tennessee Rules of Professional Conduct and unethical conduct that brought the court and bar of the Eastern District of Tennessee into disrepute and which he did not seriously dispute, this Court, pursuant to E.D.TN. LR 83.7, suspended him from the bar of the Eastern District of Tennessee for a period of three to five years ("Suspension Order," Court File No. 69, *In re Moncier*, 550 F. Supp. 2d. 768 (E.D. Tenn. 2008)). Respondent has appealed the order of suspension to the United States Court of Appeals for the Sixth Circuit (Court File No.75). Prior to filing the notice of appeal, Respondent, through his counsel, Ralph E. Harwell, filed a post-suspension motion asking the Court to clarify the limitations imposed by the suspension order (Court File No. 72). The Court decided that the general issue of what limitations a member of the bar of this court labors under while suspended did not infringe upon the Sixth Circuit's jurisdiction and a discussion of this issue would be of benefit to the public, the bar, and the bench. The Court issued a memorandum that generally defined the nature and extent of a suspension from practice in the Eastern District of Tennessee ("Memorandum Defining

Suspension," Court File No. 80).[1]  The Memorandum Defining Suspension provides the governing definitional framework regarding Respondent's suspension.

Having now defined the meaning of a suspension from practice in this district, the Court has considered the remaining aspects of Respondent's motion and concludes the notice of appeal does not deprive the Court of authority to address some of the remaining issues.

## I.   COURT'S AUTHORITY TO CONSIDER MOTION

Respondent brings his motion pursuant to Fed. R. Civ. P. 52(b) and 28 U.S.C. § 2202 (Court File No. 72, p. 1).  However, Rule 52 and indeed the Federal Rules of Civil Procedure generally are not applicable to this disciplinary proceeding because, as stated previously, this is not a civil proceeding (Court File No. 69, p. 8).  Rule 52(b) thus provides no authority for Respondent's request.

Respondent also cites 28 U.S.C. § 2202 as authority for his motion.  This reliance is misplaced since § 2202 is predicated upon the previous entry of a declaratory judgment pursuant to 28 U.S.C. § 2201.  No declaratory judgment had been entered in this case and § 2201 has never been invoked in these proceedings; therefore, § 2202 cannot provide any authority for Respondent's request.

Despite the absence of governing rules or a specific grant of statutory authority, the Court

---

[1] The definition of suspension provided in the Memorandum Defining Suspension was based upon well-established and easily located federal law, *In re Mitchell*, 901 F.2d 1179 (3d Cir. 1990), the other cases cited in the memorandum, and Tennessee law, Tenn. Sup. Ct. R. 9, § 3.1.  Nothing novel or unexpected was contained in the memorandum.  As such, the memorandum did not change in any way the terms and conditions of Respondent's suspension as they existed as of the date the Suspension Order was entered.  This long standing law was readily accessible and if located would have provided Respondent and his counsel answers to the questions raised in the motion.

has inherent authority to reconsider, amend, and change its decisions. Even after a notice of appeal is filed, the Court has this authority so long as the Court has not been divested of authority by the Court of Appeals and the Court's action will not conflict with or interfere with any potential ruling by the court of appeals. In addressing Respondent's motion, the Court is not reconsidering, amending, or changing any of its previous decisions. Rather, the Court is merely expounding on the law as it pertains to this particular issue.

## II. RESPONDENT'S SUSPENSION

Respondent's motion raises specific inquiries into the suspension as it applies to him and his law firm (Court File No. 72). The Memorandum Defining Suspension, which outlines the definition of "suspension" as used in disciplinary proceedings in this district, provides more than sufficient substance so as to permit a suspended attorney to interpret it, or obtain counsel to interpret it, and addresses some of Respondent's inquiries.

Respondent specifically seeks clarifications of the suspension as it pertains to: (1) the ability of individual judges in this district to vacate the suspension order; (2) Respondent's ability to practice law in the federal courts of the Eastern District of Tennessee; (3) Respondent's ability to operate a law firm that practices law in the federal courts of the Eastern District of Tennessee; and (4) the ability of Respondent's employees to practice law in the federal courts of the Eastern District of Tennessee.

### A. Respondent's suspension cannot be vacated on a case-by-case basis.

Respondent suggests individual judges in the district can vacate his suspension on a case-by-case basis (Court File No. 72, p. 1). This is incorrect and would undermine the purposes of

suspension. Respondent is suspended from practicing law in any court in the Eastern District of Tennessee, in accordance with the terms of his suspension (*see* Court File No. 69).

As this Court previously explained, "[t]he judicial officers of this court are not foreign bodies, but constitute the court itself" (Court File No. 6, p. 4). Respondent's suspension was an act of "the court," which entails all the judicial officers in the Eastern District of Tennessee. *See* E.D.TN. LR 83.7(a) ("The court may impose discipline on any member of its bar who has violated the Rules of Professional Conduct as adopted by the Supreme Court of Tennessee, or has engaged in unethical conduct tending to bring the court or the bar into disrepute. . . . Discipline which may be imposed includes disbarment, suspension, reprimand, or such other further disciplinary action as the court may deem appropriate and just."). Thus, to the extent Respondent seeks individual judges to rule on the appropriateness of the suspension, or how that suspension affects Respondent's ability to represent a specific client, those determinations have already been made in the original suspension order (*see* Court File No. 69).[2] Respondent has provided the Court with no reason to revisit the issue.

---

[2]The proper procedure to follow when a suspended attorney wishes to be allowed to continue to practice would be to seek reconsideration of the order of suspension from the court as a whole through the Chief Judge. Respondent has already made such a request for reconsideration (Court File No. 70), which was denied (Court File No. 71), in large part because Respondent provided the Court with no basis whatsoever, and made no effort to provide any basis, to grant his request.

Respondent has also made three separate and distinct appeals to the Sixth Circuit asking that court to stay the disciplinary proceedings or the imposition of the suspension. (Court File No. 30; March 5, 2008, Sixth Circuit Case No. 07-6053, Order denying motion for stay; May 5, 2008, Sixth Circuit Case No. 07-6053, Order denying motion for stay pending appeal; July 3, 2008, Sixth Circuit Case No. 08-5645, Order denying motion for stay). The Sixth Circuit rejected Respondent's request in each instance and in the July 3, 2008 order noted that "[i]n view of the arguments advanced in the motion to stay, the district court's findings and conclusions, and *the public interest*, we are unconvinced that a stay should enter at this time." (July 3, 2008 Order, p. 2) (emphasis added).

### 1. Purposes of the Suspension - Incentive for Respondent to Raise His Professional Conduct to the Standards of this Bar

In the Suspension Order, the Court identified a number of objectives of Respondent's discipline, i.e., the suspension. One of the objectives was to "correct the unethical and unprofessional behavior of Respondent" (Court File No. 69, p. 74). The Court elaborated on this objective by stating that the purpose of discipline for Respondent was to "impress upon Respondent the absolute requirement he live up to the standards and expectations of the bar of this court; to provide him an opportunity to demonstrate understanding of his unethical and unprofessional conduct; to provide him an opportunity to make amends for this misbehavior; and to allow him to return to this bar under supervision to protect the public and the integrity of the bar of this court" (*id*.). This objective is rehabilitative. If Respondent were allowed to practice in some courts in this district but not others, before some judges of this bench but not others, then the goal of impressing upon him the necessity of his abiding by the standards of the bar of this district would be eviscerated. Instead of the suspension serving as an incentive for improvement in Respondent's conduct, it would merely be a minor obstacle to be endured until he was fully restored to the bar.

### 2. Purposes of the Suspension - Protection of the Public

Another identified objective was to protect the public from Respondent (*id.*, p. 73). The Suspension Order stated: "Permitting an attorney who refuses to accept the ethical and professional obligations of members of the bar of this court to continue as a member of this bar poses an immediate danger to the public, the bar, and this court." (*Id.*, p. 77). Having concluded that Respondent's continued membership in the bar is a threat to the public, the bar, and this court, it would be irrational to then permit Respondent to practice in federal court in this district.

Respondent has not conceded nor recognized that it is unprofessional conduct to abandon or threaten to abandon a client during a court proceeding; to disobey an order of a judicial officer of this court, even when he disagrees with the order; to interrupt and talk over a presiding judicial officer; or to make scurrilous attacks and accusations against opposing counsel. It is not compatible with the objective of protecting the public from the danger posed by Respondent to allow him to practice in some courts in this district.

> 3. **Purposes of the Suspension - Protection of the Integrity and Standards of the Court and the Bar of the Eastern District of Tennessee**

A third objective of the discipline announced in the Suspension Order was to protect the integrity and standards of the court and the bar of this district (*id.*, pp. 73-74). This goal was reiterated in the Memorandum Defining Suspension when it stated that one of the goals of suspension is to clearly demonstrate to the public, the bar, and potential clients that the suspended attorney cannot exercise any of the powers, prerogatives, and privileges of membership in the bar of this court. Permitting a suspended attorney to practice in even some courts would contravene this goal. Following Respondent's suggestion would also leave the public and the bar at a loss to understand what a suspension means when the suspended lawyer would still be practicing on a daily basis before certain judicial officers of the district.

> 4. **Purposes of the Suspension - Deterrence of Other Members of the Bar of this Court from Similar Unethical and Unprofessional Conduct**

Another goal of Respondent's suspension was to serve as a deterrent to other members of the bar from committing similar misconduct (*id.*, p. 74). Permitting Respondent to practice in some courts would ill serve this goal. Litigation is a stressful and challenging endeavor. There are always occasions in contested cases where anger, impatience, or vigorous disagreement might give rise to

6

an urge to threaten to abandon a client, to disparage opposing counsel, to interrupt the presiding judge, or even to disobey an order of that judge. Those urges must be controlled and contained. Respondent's suspension serves the useful purpose of clearly demonstrating the necessity of such control. An attorney contemplating misconduct similar to Respondent, seeing Respondent practicing on a daily basis in our courts, would have little reason to avoid conduct that might lead to being placed in Respondent's position.

### 5. Necessity of Uniform Standards in District

Respondent's suspension was an act of the entire judiciary of the Eastern District of Tennessee acting through the Chief Judge in his capacity as the unified voice and authority of the entire court. His suspension was not the act of a judge in his individual capacity.[3] This is the mechanism contained in the court's local rules. It would be very peculiar that, where the entire court had taken an action, a litigant would still be free to seek a suspension of that action from each individual judicial officer. This would lead to a chaotic situation where a suspended lawyer would be permitted to practice before one bankruptcy judge, but not another; before one magistrate judge, but not another; before one district judge, but not another; in district court, but not in bankruptcy court; in one division, but not another. An appeal by Respondent from a ruling of a bankruptcy or magistrate judge who had permitted him to practice might be to a district judge that did not allow him to practice. This would be the antithesis of what E.D.TN. LR 1 envisioned and of the uniform admission process established by the court's local rules. Adopting Respondent's suggestion for

---

[3]Had Respondent been suspended from practicing by an individual judge before that particular judge, his argument would have more appeal. If an individual judge bars an attorney from practicing in his particular court, such a decision may or may not be binding upon the other judges of the district.

7

piecemeal admission would disrupt the orderly administration of the affairs of this court.

Implicit in Respondent's suggestion is that different judges adhere to different standards of ethics and professionalism and there is no uniform standard in this district to which lawyers must abide. This notion is in contravention of the court's local rules, which establish a uniform standard of conduct for attorneys practicing in this district. This notion is also inconsistent with the local rules being the authoritative statement of professional standards by the entire judiciary of this district. Also, Respondent's suggestion is inconsistent with the obligation of all judicial officers of this district to uphold the highest standards of ethics, professionalism, and the local rules themselves. Finally, it would result in confusion on the part of the public and the bar as to what is acceptable conduct on the part of attorneys in the Eastern District of Tennessee.

**B.    The court has the authority to discipline a member of the bar of the Eastern District of Tennessee. While suspended, Respondent cannot practice as an attorney, nor reap the benefit of such practice, in the Eastern District of Tennessee.**[4]

Respondent asserts "[t]his Court does not have jurisdiction to restrict Mr. Moncier from conducting his legal business or providing legal services as defined [sic] T.C.A. § 23-3-101 pertaining to secular federal rights so long as Mr. Moncier does not sign pleadings or appear before a Court [sic] in this district" (Court File No. 72, p. 13).[5] As previously stated, the Memorandum

---

[4]Respondent's challenge to the authority of the court to control the professional activities of members of its bar is reminiscent of Respondent's challenge made to the initial Show Cause Order (Court File No. 5, pp. 1-3). There, Respondent argued the court had delegated its authority to the state of Tennessee. That challenge was rejected, as is this one.

[5]Defendant cites the Tennessee Code Annotated ("Tenn. Code Ann.") for definitions of "law business" and "practice of law." In regulating its bar, and in defining the terms of suspension from that bar, the court of the Eastern District of Tennessee is not bound by definitions provided in state law. As stated in the Suspension Order, a great many of the members of the bar of this court are not licensed by the state of Tennessee. However, even if the court were to adopt these definitions, they

8

Defining Suspension explains the general parameters of a suspension, and that memorandum addresses this issue (*see* Court File No. 80). The order of suspension applies to much more than simply signing pleadings or appearing before a judge of this district.

The court's jurisdiction and authority to regulate the practice of members of the bar of this court was more than adequately discussed in the Suspension Order (Court File No. 69, pp. 7-8). In sum, federal courts have the inherent authority to discipline members of their bar as well as the authority to authorize attorneys to practice before them. Thus the court's jurisdiction derives from Respondent's membership in the bar of this court. By voluntarily seeking and obtaining membership in the bar of the Eastern District of Tennessee, Respondent became an officer of the court (*see* Court File No. 69, p. 2, n.1), and subjected himself to the disciplinary authority and jurisdiction of this court. Respondent remains a member of the bar of the Eastern District of Tennessee even though suspended. So long as he is a member of the bar of this court, he is subject to the professional and ethical standards of the bar of this court and may be disciplined for failure to comply with those standards. Discipline can include a reprimand or admonition, a lengthier

---

support the holding here.
       Tenn. Code Ann. § 23-3-101(3) defines "practice of law" as "the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies, or the soliciting of clients directly or indirectly to provide such services." Under this definition, from the discussion here, and the Memorandum Defining Suspension, it is clear Respondent cannot continue his "practice of law" in relation to any matter or case before federal court in the Eastern District of Tennessee.
       Respondent is free to practice law in the state courts of Tennessee and in any other federal court outside of the Eastern District of Tennessee that permits him to do so.

9

suspension, disbarment, or other appropriate action.[6]

To briefly reiterate, Respondent cannot provide legal services of any kind directly or indirectly to clients, he may not solicit or accept clients, nor can he act in the capacity of an attorney in any way in relation to any matter or case before federal court in this district. The Court does not understand Respondent's use of the phrase "secular federal rights" in this context;[7] however, to the extent Respondent intends to advise clients, either directly or through others, or otherwise provide legal services concerning any matter or case in any federal court in the Eastern District of Tennessee, doing so would violate his suspension order.

---

[6]Respondent, even though suspended, is a member of this bar and is thus still subject to the professional and ethical standards of this court as discussed in the Suspension Order and E.D.TN. LR 83.7. This includes both the Tennessee Rules of Professional Conduct and widely recognized federal standards. In addition to considering additional sanctions for violating the order of suspension or additional misconduct, the Court may refrain from instituting a new action and merely take into account Respondent's behavior while on suspension in determining whether to reinstate Respondent to full membership in the future should he apply for such membership (*see* Court File No. 69, p. 78, Condition (3)(a)). Relevant considerations would include Respondent's conduct since the entry of the suspension order; his ethical obligation to assist the court with the management of his former cases after his suspension and how expeditiously the transition to new counsel was handled; whether Respondent accepted responsibility for his conduct; whether Respondent was cooperative or recalcitrant; whether Respondent ethically assisted judges in expeditiously moving their cases by promptly and completely divorcing himself from cases and clients and assisting the clients in obtaining new counsel; whether Respondent promptly returned unearned fees to clients after his suspension; whether Respondent, after his suspension, still referred in court filings to his still having clients with cases in this court; whether Respondent still continued to come to court demonstrating a continued interest in pending cases and former clients when he could no longer have any professional involvement with such cases and former clients; and, whether Respondent continued to have contact with former clients after his suspension.

[7]The term "secular" is utilized to identify activities which are separate from religion or religious beliefs. As used in the Tennessee Code, it clarifies that one can practice religious law before a religious body without the necessity of a law license. Therefore the word denotes the distinction between practice before a church tribunal or court and a state court. In federal practice, the word has no application. Respondent's usage of the word would suggest he could practice the full gamut of federal law in this district so long as he did not sign pleadings and filings and appear in court. If that is Respondent's interpretation, it is obviously incorrect.

10

Again, as fully explained in this Court's previous memorandum, Respondent cannot simply circumvent his suspension by providing legal services outside the presence of the court, nor can he draft court filings, then have those filings signed and submitted by an admitted attorney. *See Cooper v. Texaco, Inc.*, 961 F.2d 71, 72 (5th Cir. 1992); *In re Mitchell*, 901 F.2d at 1187 (citing *Crawford v. State Bar of Cal.*, 355 P.2d 490, 495 (Cal. 1960)).

As fully set forth in the Memorandum Defining Suspension (Court File No. 80), Respondent, like any suspended attorney, is not permitted to serve as a law clerk or paralegal in this district.

    **C.    Respondent cannot conduct a legal business for matters or cases in the Eastern District of Tennessee.**

Respondent cannot conduct a legal business for matters or cases in the Eastern District of Tennessee.[8] Respondent runs a law business, bearing his name, which has at least one employee, a Mr. David S. Wigler (Court File No. 72, p. 2). Respondent's suspension prohibits him from conducting a legal business for cases in federal court in this district for at least two compelling reasons.

---

[8]Again, Respondent cites the Tennessee Code Annotated, which although informative, is not binding on this Court in defining the limitations of an attorney suspended from practicing in federal court in this district. However, the definition provided in the Tennessee Code again supports the holding here.

    Tenn. Code Ann. § 23-3-101(1) defines "law business" as "the advising or counseling for a valuable consideration of any person as to any secular law, or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights, or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to secure for any person any property or property rights whatsoever, or the soliciting of clients directly or indirectly to provide such service." Under that definition, and in light of the Court's discussion here and in the Memorandum Defining Suspension, it is clear Respondent cannot conduct a "law business" with matters before the federal court in the Eastern District of Tennessee.

11

First, Respondent is prohibited from rendering legal services of any type to clients. This means he can have no clients with matters or cases in this court. Second, he is prohibited from accepting or collecting fees for such representation. Because Respondent is not permitted to act in the capacity of an attorney in the Eastern District of Tennessee federal court, he cannot accrue the associated benefits, including procuring or sharing fees for representation before the courts of the district. Just as a layperson cannot share in the fees paid to attorneys, Respondent, as a suspended attorney, cannot share in fees obtained through representation in courts from which he has been suspended from practicing. Respondent cannot hold himself out as authorized to provide legal services to anyone with a matter or case in the Eastern District of Tennessee.

> **D.** **The order of suspension is personal to Respondent and does not operate to suspend from practice any other attorney licensed to practice in federal court in the Eastern District of Tennessee. However, there are serious legal, ethical, and practical considerations presented by employees or associates of Respondent engaging in practice while employed or associated with Respondent.**

Throughout his motion, Respondent questions whether attorneys already licensed to practice in this court, or attorneys who may seek such a license in the future, are prohibited from practicing law in the Eastern District of Tennessee due to Respondent's behavior and subsequent suspension (Court File No. 72, pp. 1-3, 5, 6 n.2). Any attorney, if a member in good standing of this court, is free to practice before this court and enjoys all the powers, prerogatives, and privileges of a member of the bar of the Eastern District of Tennessee. Furthermore, no attorney otherwise qualified would be denied admission to this bar based upon Respondent's suspension or based solely upon an association with Respondent.

The only limitations on representations before the federal court of this district are imposed upon Respondent. As previously discussed, Respondent cannot provide legal services to anyone,

12

collect or share fees from, or lend his name (through his self-named law firm) to, the representation of clients with a matter or case before any federal court in this district. Doing so will result in *Respondent's* violation of his suspension, and could lead to additional disciplinary action and charges of criminal contempt for disobeying a court order. Mr. Wigler, or any other similarly situated attorney licensed to practice before the federal court of this district, is permitted to serve as counsel independently or in any other capacity that does not lead the public to believe Respondent is licensed to or otherwise involved in the practice of law before the federal courts in this district.[9]

### 1. Legal Restraints

However, there are legal, ethical, and practical considerations that will bear upon an employee's or associate's practice. Such employees or associates cannot aid, abet, or assist Respondent in circumventing the terms of the order of suspension. They cannot act as "fronts," *see In re Mitchell*, 901 F.2d at 1188; allow their names to be placed on pleadings or filings prepared by Respondent, *see Cooper*, 961 F.2d at 72; be directed, controlled, supervised, or counseled by Respondent; allow Respondent surreptitiously to practice in federal court; or, allow Respondent to have any contact, directly or indirectly, with clients or witnesses. Such employees or associates cannot be assigned by Respondent to represent a client, nor could an employee or associate allow Respondent to provide litigation support or financial support for a matter or case before the court. All of these acts would be in violation of the suspension order and could subject the employee or associate to disciplinary action and criminal prosecution. It would be wise for an employee or

---

[9]The Court is hopeful Mr. Wigler will be able to continue to practice in this court. This will require Mr. Wigler to separate himself while representing clients in this court from Respondent so as to avoid the legal, ethical and practical considerations alluded to in this memorandum. Because Mr. Wigler has experience and knowledge with respect to some of Respondent's former cases, it would be helpful to the court if Mr. Wigler could continue as counsel.

13

associate of Respondent with matters or cases before this court to refrain from any discussion about such matters or cases in federal court in this district with Respondent, directly or indirectly.

Moreover, the question of fees presents formidable ethical issues. Respondent cannot collect or retain fees from clients while under suspension, nor can he retain fees for work performed while under suspension or that are unearned. This means he cannot share the fees with an employee or associate, redirect the fees to the employee or associate or direct the client to give the fees to the employee or associate, or use the fees to pay the employee's or associate's salary. If a client decides to retain an employee or associate and gives fees to the employee or associate, then no part of the fees may inure to the benefit of Respondent. The employee or associate cannot share the fees with Respondent, cannot have the fees go through Respondent's bank account, and cannot use any of the fees to pay or defray Respondent's office expenses, such as rent, clerical support, office equipment, computer and communication services, and the like. If the employee or associate chooses to represent a client in federal court pro bono, Respondent cannot pay the employee's or associate's salary for the time the employee or associate is working on the case, or provide the employee or associate with any litigation support or services.

### 2. Ethical and Practical Considerations

There are additional ethical and practical concerns for employees or associates of Respondent's law firm. Representation in the federal courts of this district by anyone working as an employee or associate of Respondent's *self-named* law firm would create a clear, misleading, and prohibited representation to the public that Respondent was permitted to and indeed was practicing law before federal courts in this district. As recognized in *In re Kuta*, such misrepresentations would "lessen the public's regard for the effectiveness of our attempt to discipline errant attorneys, and

14

would foment the belief that the public was not being protected from unethical attorneys." 427 N.E.2d 136, 140 (Ill. 1981). The employee or associate would have to ensure that such impressions that Respondent was still permitted to practice were not created.

In using Respondent's law office, the employee or associate would have to consider what a former client of Respondent would think coming to Respondent's law office on a matter or case in federal court in this district, making telephone calls to Respondent's office, and meeting with Respondent's employees or associates. It would be reasonable for such a client to conclude that Respondent was still involved and maintained a professional interest in his or her case.

While under suspension, Respondent cannot exercise any of the symbolic powers, prerogatives, or privileges of membership in the bar that would lead a reasonable person to conclude or infer Respondent was still a member of the bar or had a professional interest in matters or cases before the court. "Members of the bar who are under suspension will be required to comply with the terms of the decree suspending them in such a manner that there may be no ground for suspicion on the part of other members of the bar or of the public that the decrees of the court are not being exactly observed in their letter and their spirit." *In re Mitchell*, 901 F.2d at 1185 (citing *In re Lozitte*, 79 A..960, 961 (R.I. 1911)).

The employee or associate would also have to consider the ethical implications of avoiding suggesting to the public Respondent was still permitted to practice in this court. The employee or associate would have to consider: whether the employee or associate could meet with clients or witnesses in Respondent's office; whether the employee or associate could allow Respondent to accompany him or her to court or attend court in any of the employee's or associate's matters or cases; whether the employee or associate could meet with any witnesses in Respondent's office;

15

whether the employee or associate could accept advice from Respondent on a matter or case in federal court or discuss such cases with Respondent; whether the employee or associate could use Respondent's computer system; whether the employee or associate could use Respondent's district court CM/ECF links or authorization; whether the employee or associate could allow his or her name to be associated with Respondent during trial; whether the employee or associate may have Respondent's name on his or her stationary or business cards if used in a federal matter or case; whether the employee or associate could have business calls received at Respondent's office or make calls from Respondent's office; and whether the employee or associate could use Respondent's email system to receive or send email messages.

All attorneys admitted to practice before this court owe a duty of candor and honesty to the court. This would place upon Respondent's employees and associates the obligation to notify the court of instances where Respondent may have stepped over the line, whether advertently or inadvertently. Of course the Court does not know the internal dynamics and relationships between Respondent and his employees, but another practical difficulty might arise where employees or associates face a conflict between their duty to the court and their loyalty to their employer.

To avoid these practical difficulties, it would be wise for the employee or associate undertaking to represent clients in this district to establish a "confidentiality screen" separating him or herself completely from Respondent on any matter or case before this court. *See United States v. Parker*, 23 F.3d 409 (Table), 1994 U.S. App. LEXIS 10689, *21-22 (6th Cir. 1994), *cert. denied* 513 U.S. 907 (1994); *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir. 1983).

    **E.**    **Counsel of Record**

One further issue raised by Respondent bears comment by the Court since the issue also

16

concerns employees or associates of Respondent. In a previous motion Respondent describes a situation in a case in this district, *United States v. Newman*, No. 3:07-CR-89-2 (E.D. TN filed July 18, 2007), where attorneys were listed as attorneys of record for a party, but later claimed they were not involved in the case, did not have knowledge of the case, nor were they capable and/or willing to secure such knowledge to represent the client for which they were attorneys of record (*see* Court File Nos. 70, pp. 3-4; 72, pp. 3-4). None of these limitations was disclosed in the record at the time of the entry of the attorney into the case.

It goes without saying that a lawyer, by entering himself or herself as an attorney of record for a client, is attesting that he or she possesses the qualifications, ability, and familiarity with the case to act as a representative for that client to the court. If an attorney does not possess such skill and knowledge, it is unethical to attest to such by entering as an attorney of record. Furthermore, if at any point after representing him or herself as an attorney of record, that attorney no longer possesses a familiarity with the case and is unable or unwilling to immediately obtain such knowledge, that attorney not only should, but is ethically bound, to remove himself or herself *immediately* as an attorney of record.

This requirement is extremely important. A court relies, and is justified in relying, upon the attorney's appearance as counsel of record. The court assumes counsel of record is prepared to act as the client's representative to the court. If an attorney has improperly listed himself or herself as counsel of record when the attorney has no intention of carrying out that responsibility, it does a great disservice to the court, the court's ability to manage its docket, and the judicial process.

**III. CONCLUSION**

Respondent has raised inquiries concerning his ability to continue to practice in federal court in the Eastern District of Tennessee. This memorandum, in conjunction with the Memorandum Defining Suspension, addresses some of those questions. This court has the authority to impose discipline upon Respondent and all other members of the bar of this court. That includes placing limits upon Respondent's practice as a member of the bar of this court. The discipline was imposed by and upon the authority of all of the judicial officers of this court; piecemeal reinstatement is not an option. Respondent's associates and employees who are members of the bar of the Eastern District of Tennessee are unaffected by Respondent's suspension; however, there are serious legal, ethical, and practical considerations that such associates and employees must keep in mind if undertaking cases in the federal courts in this district. Should an associate or employee represent a client in this court, the associate or employee must ensure Respondent has no involvement in the case and no contact with clients or witnesses.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**